1  DOUGLAS CARSTEN, State Bar No. 198467
   (dcarsten@wsgr.com)
2  NATHANIEL R. SCHARN, State Bar No. 305836
   (nscharn@wsgr.com)
3  WILSON SONSINI GOODRICH & ROSATI P.C.
   12235 El Camino Real, Suite 200
4  San Diego, California 92130
   Telephone: 858.350.2300
5  Fax: 858.350.2399

6  RYAN SMITH, State Bar No. 229323
   (rsmith@wsgr.com)
7  CHRISTOPHER D. MAYS, State Bar No. 266510
   (cmays@wsgr.com)
8  WILSON SONSINI GOODRICH & ROSATI P.C.
   650 Page Mill Road
9  Palo Alto, CA 94304
   Telephone: 650.493.9300
10 Fax: 650.493.6811

11 Attorneys for Plaintiffs IPS Group, Inc.

12                UNITED STATES DISTRICT COURT

13                SOUTHERN DISTRICT OF CALIFORNIA

14                      SAN DIEGO DIVISION

| | |
|---|---|
| IPS GROUP, INC., a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>CIVICSMART, INC., a Delaware corporation, DUNCAN PARKING TECHNOLOGIES, INC., a Delaware corporation, and DUNCAN SOLUTIONS, INC., a California corporation,<br><br>Defendants. | CASE NO. 17-cv-0632-CAB (MDD)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF IPS GROUP, INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Cathy Ann Bencivengo<br>Courtroom: 4C<br>Date: June 30, 2017<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>JURY TRIAL DEMANDED |

# I. INTRODUCTION

Plaintiff IPS Group, Inc. ("IPS Group") respectfully moves the Court to enjoin defendants Duncan Parking Technologies, Inc. and CivicSmart, Inc. (collectively "the PI Defendants") from engaging in unfair business practices and false advertising and to correct false statements they have made with respect to their product and IPS Group's intellectual property. In connection with attempts to sell their Liberty single space meter, IPS Group believes the PI Defendants have made false statements about their meters in connection with IPS Group's intellectual property. In particular, the PI Defendants incorrectly stated that IPS Group has given assurances that the Liberty meter would not infringe any of IPS Group's patents if it does not include a solar panel. IPS Group believes the PI Defendants have made this statement in connection with attempts to sell Liberty meters without solar panels while in head-to-head competition with IPS Group for a contract, and either knew or should have known these statements were false. Because the main purchasers of parking meters are public entities, such as cities, counties, and educational institutions, the PI Defendants' misrepresentations stand to impact awards of public contracts and expenditures of public funds and to undermine the integrity of the public procurement process. Competition for public works contracts should be based on truthful representations and an honest process.

The PI Defendants should not be allowed to continue to make these false statements in connection with their efforts to sell the Liberty meter and to lull these local government entities into a false sense of security. Nor should the PI Defendants be permitted to continue attempting to capture market share from IPS Group based on false advertising. Accordingly, IPS Group requests that the Court enter a preliminary injunction enjoining the PI Defendants from engaging in unfair business practices and false advertising in violation of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*; California's Unfair Competition Law ("UCL"), California Business &

1  Professions Code §§ 17200, *et seq.*; and the Lanham Act § 43(a), 15 U.S.C. §
2  1125(a), by representing that IPS Group has stated that a Liberty meter without a
3  solar panel does not infringe any IPS Group patents and to submit corrective
4  statements to any prospective customer to whom the PI Defendants have
5  disseminated such false statements.

6  **II.    STATEMENT OF FACTS**

7       IPS Group is a local company that designs, engineers, and manufactures low
8  power wireless communication technologies, including its solar-powered credit
9  card enabled smart single space meters with wireless functionality.  IPS Group has
10 received more than a dozen patents related to its single-space parking meter
11 technology.  The PI Defendants are competitors of IPS Group, and offer their own
12 credit card enable single space parking meter, the Liberty.  While the Liberty
13 historically had a solar panel, at some point after IPS Group filed an infringement
14 action, captioned *IPS Group, Inc. v. Duncan Solutions, Inc.*, 15-cv-01526-CAB-
15 MDD ("the First Action"), alleging the Liberty infringes U.S. Patent Nos.
16 7,854,310 (the '310 patent") and 8,595,054 ("the '054 patent"), the PI Defendants
17 began offering the Liberty without a solar panel.  Both the '310 patent and the '054
18 patent involve the use of solar power.  IPS Group did not assert in the First Action
19 many of its patents related to, for example, power management within or remotely
20 updating single-space parking meters.  Several such patents are asserted in this
21 action and include claims that do not require the use of solar power or a solar
22 panel.  *See, e.g.*, Doc. No. 1-5, U.S. Pat. No. 8,749,403; Doc. No. 1-3, U.S. Pat. No
23 8,513,832 at claim 1.

24      IPS Group has not represented—and would not represent—that a Liberty
25 meter without a solar panel does not infringe any of its patents.  Randall Decl. at ¶
26 3.  Yet, on information and belief, in connection with at least one bid—to the City
27 of Milwaukee—the PI Defendants represented to city officials that IPS Group
28 stated that a Liberty meter without a solar panel would not infringe any IPS Group

patents. Pls.' Am. Compl. ¶¶ 35-36, 39, 138. IPS Group believes the PI Defendants made this false statement precisely to induce prospective customers into relying on it to purchase the Liberty instead of an IPS Group meter, and either knew or should have known that the statement was false.

IPS Group and the PI Defendants are in direct competition through trials of their parking meters in Milwaukee. Randall Decl. at ¶ 4. The City of Milwaukee has not yet made its final decision on which parking meter supplier to select, *id.*, and the PI Defendants' false statements are likely to impact that decisionmaking process.

## III.  LEGAL STANDARD

To obtain a preliminary injunction, a party must show "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tip in [its] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012); *Antares Pharma, Inc. v. Medac Pharma, Inc.*, 55 F. Supp. 3d 526, 529-30 (D. Del. 2014). All of these factors favor enjoining the PI Defendants.

## IV.  ARGUMENT

### A.  IPS Group is Likely to Succeed on the Merits

The PI Defendants' statements are doubly false because IPS Group never **stated** that a Liberty meter without a solar panel would not infringe any patent in its portfolio and, as IPS Group will prove in this litigation, because such meters in fact **do infringe** certain of IPS Group's patents. Further, the PI Defendants knew—or if they had expended even reasonable diligence should have known—that these statements were false. These false statements were made precisely to induce the cities to which they were made into purchasing the PI Defendants' product in lieu of IPS Group's products. Based on these facts, IPS Group is likely

IPS MOTION FOR PRELIMINARY INJUNCTION                -3-                CASE No.: 3:17CV0632-CAB (MDD)

to succeed in proving the PI Defendants engaged in unfair business practices and false advertising in violation of the FAL, the UCL, and the Lanham Act.

### B. IPS Group is Likely to Suffer Irreparable Harm

Without an injunction, the PI Defendants will continue to make false statements amounting to unfair business practices and false advertising to IPS Group's potential customers. Allowing the PI Defendants to capture market share based on their false statements erodes the goodwill IPS Group has worked tirelessly to build in the public parking industry and diminishes the value of the intellectual property it has curated based on its innovation in the industry.

For IPS Group, a lost sales opportunity in one city is not quantifiable simply by the value of that prospective contract, but also by future prospective contracts in the same city or region, add-on sales (such as sensors) and ongoing revenue streams (such as from credit card transaction fees), and the lost opportunity to prove the value of its products in that particular city and further build its reputation in the market. Randall Decl. at ¶ ¶5-13. This lost opportunity will have unquantifiable reputational ripple effect as other cities go out to bid. *Id.* Further, offering these meters at a substantial discount in association with these false representations erodes the price customers are willing to pay for smart single space meters.

IPS Group has never licensed its patents and has no interest in doing so because it values its reputation and goodwill far more than the potential revenue from licensing its intellectual property to a competitor. *Id.* at ¶ 14. The PI Defendants' false statements, which mischaracterize the scope of the intellectual property portfolio IPS Group has built around its flagship products, as well as IPS Group's own statements in connection with its patent portfolio, create a misunderstanding in the marketplace about the scope of innovation IPS Group has brought to the public parking market. For example, the PI Defendants false statement creates the incorrect impression that IPS Group's innovation is limited to

1 adding solar panels to parking meters, when in fact its innovation paved the way
2 for wirelessly enabled meters that can accept payment from non-cash sources such
3 as credit cards and can perform a variety of sophisticated functions that enhance
4 efficiency in cities, such as updating the meters remotely, all while operating using
5 advanced power management technology.

6     This irreparable harm is imminent. As discussed above, IPS Group and the
7 PI Defendants are directly competing for at least one contract in which the PI
8 Defendants have offered a Liberty meter without solar panels and, IPS Group
9 believes, have made false statements in connection with IPS Group's intellectual
10 property. City officials are nearing a point at which they will make a decision on
11 how to award this public contract, and failure by the PI Defendants to correct this
12 statement—or worse, to continue to make such statements—stands to irreparably
13 harm IPS Group as discussed above.

14     **C.    The Balance of Equities Tip In IPS Group's Favor**

15     The relief IPS Group requests is extremely narrow—that the PI Defendants
16 be enjoined from making false statements regarding IPS Group's representations
17 about whether the Liberty without a solar panel infringes. If the PI Defendants are
18 precluded from making these statements, the only impact would be that they would
19 not be able to sell their products based on false representations, and the PI
20 Defendants are free to compete fairly (albeit with the knowledge that IPS Group
21 accuses their product of infringing its patents regardless of whether it includes a
22 solar panel). On the other hand, an injunction would prevent further irreparable
23 damage to IPS Group's reputation and goodwill while continuing to allow the PI
24 Defendants to offer their product for sale (at their own risk of being found liable
25 for infringement).

26     **D.    An Injunction is in the Public Interest**

27     The public does not benefit from false advertising related to these parking
28 meters. By making these statements, the PI Defendants are encouraging the cities

to which they are offering the Liberty meter to infringe IPS Group's patents, as IPS Group will prove on the merits in this matter. This exposes municipalities to liability for infringement, unnecessarily jeopardizing public funds, as well as the possibility of wasting money on products that may need to be decommissioned. After the meters are found to infringe, these cities may be faced with a permanent injunction requiring decommissioning of the infringing meters or preventing the PI Defendants from providing services related to these meters. Thus, allowing the PI Defendants to continue to make these false statements to induce public bodies, such as city councils, to purchase Liberty meters on the false assurance that a patent holder has stated the accused product would not infringe is not in the public interest. These false statements also undermine the honesty of the public procurement process.

Relatedly, as discussed above, the PI Defendants would be free to continue to offer to sell the meters at their own peril, they simply would not be allowed to make and would be required to correct certain false statements in connection with those sales efforts. So even in the unlikely event that the PI Defendants' meters are found not to infringe, the public would still suffer no harm—for example, a loss of legitimate competition—by virtue of the requested preliminary injunction.

## V. CONCLUSION

For the foregoing reasons, IPS Group's Motion for a Preliminary Injunction should be granted.

Dated: May 26, 2017    Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:  */s/ Douglas H. Carsten*
     Douglas H. Carsten

Attorneys for Plaintiff IPS Group, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed with the Court's CM/ECF system which will provide notice on all counsel deemed to have consented to electronic service. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing document by mail on this day.

Dated: May 26, 2017

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Douglas H. Carsten*
      Douglas H. Carsten

Attorneys for Plaintiff IPS Group, Inc.