# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPS GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> CIVICSMART, INC., DUNCAN PARKING TECHNOLOGIES, INC., and DUNCAN SOLUTIONS, INC., <br><br> Defendants. | Case No.: 17-cv-0632-CAB (MDD) <br><br> **ORDER ON MOTION TO DISQUALIFY COUNSEL** <br> **[Doc. No. 62]** |

Before the Court are Plaintiff IPS Group's motions in two related cases, 15cv1526 [Doc. No. 171] and 17cv632 [Doc No. 62],[1] to disqualify Defendants' counsel, Mintz, Levin Cohn Ferris Glovsky and Popeo P.C. ("Mintz"). The Court finds this motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1).

**I.    Background**

On July 10, 2015, IPS Group sued Defendants Duncan Solutions, Inc., and Duncan Parking Technologies, Inc., in this District for patent infringement in Civil Case No.

---

[1] As the motions are virtually identical, the Court will reference the filings in 17cv632, unless specifically noted otherwise. Docket numbers and page references are those assigned by CM/ECF for the docket entry.

15cv1526. Hunton & Williams, LLP and WHGC, P.L.C. represent Duncan Parking in the 2015 litigation. On June 12, 2017, Mintz filed a notice of appearance on behalf of Duncan Parking joining the other two defense firms. [Doc. No. 122 in 15cv1526.]

On March 29, 2017, the IPS Group also sued defendants Duncan Solutions, Inc., Duncan Parking Technologies, Inc. and CivicSmart, Inc., in this District for patent infringement and other claims in Civil Case No. 17cv632. On April 18, 2017, Hunton & Williams and WHGC appeared for Defendants Duncan Parking and CivicSmart and K&L Gates LLP appeared for Duncan Solutions. [Doc. No. 12 in 17cv632.] On June 6, 2017, Mintz filed a notice of appearance on behalf of Duncan Parking and CivicSmart joining the other defense firms. [Doc. No. 26.] On June 23, 2017, Mintz filed a notice of appearance on behalf of Duncan Solutions joining K&L Gates. [Doc. No. 40.]

On July 31, 2017, IPS Group filed its motions to disqualify Mintz from both litigations on the basis that it is a current client of Mintz and simultaneous representation of IPS Group and the Defendants is a breach of the duty of loyalty requiring automatic disqualification. Alternatively, IPS Group contends that even if deemed a successive representation, there is a substantial relationship between the prior representation of IPS Group and the current representation of the defendants that requires disqualification of the Mintz firm.

**II.  Legal Standard**

Motions to disqualify are governed by state law. In this District the California Rules of Professional Responsibility apply. *See* CivLR 83.4.b. (every attorney before this district court must "comply with the standards of professional conduct required of members of the State Bar of California.")

Attorneys owe current clients a duty of undivided loyalty to avoided undermining public confidence in the legal profession and the judicial process. *Flatt v. Super. Ct.,* 9 Cal. 4th 275, 284 (1994). California Rule of Professional Responsibility 3-310(C) addresses concurrent representation of adverse clients and provides that a member shall

not, without informed written consent of each client, accept representations of more than one client in a matter in which the interests of the clients potentially or actually conflict.

"When a law firm simultaneously represents clients who have conflicting interests, with few exceptions, 'disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other.'" *Western Sugar Coop. v. Archer-Daniels-Midlands Co.,* 98 F. Supp. 3d 1074, 1081-82 (C.D. Cal. 2015) (citing *People ex rel. Dep't of Corp. v. SpeeDee Oil*, 20 Cal. 4th 1135, 1147 (1999)). This is because the value at stake is loyalty, rather than confidentiality. A client cannot be expected to sustain trust and confidence in its counsel who is also representing the client's adversary in litigation. *In re Charlisse C.*, 45 Cal. 4th 145, 160 (2008).

In instances of successive representation, when an attorney undertakes to represent a client adverse to a former client, the focus is on confidentiality. *Western Sugar,* 98 F. Supp. 3d at 1080. California Rule of Professional Responsibility 3-310(E) governs successive representation of clients with adverse interests and provides that a member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

The former client may disqualify the attorney by showing a "substantial relationship" between the subjects of the prior and current representations. *Flatt,* 9 Cal. 4th at 283. "This protects the enduring duty to preserve client confidences that survives the termination of the attorney's representation. When a substantial relationship between the representations is established, the attorney is automatically disqualified from representing the second client." *Western Sugar*, 98 F. Supp. 3d at 1081 (internal citations omitted). To establish a substantial relationship the party moving for disqualification must show that "information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is material,

to the evaluation, prosecution settlement or accomplishment of the current representation given its factual and legal issues." *Id. (*citing *Khani v. Ford Motor. Co*., 215 Cal. App. 4th 916, 921 (2013)).

The right to disqualify counsel is a discretionary exercise of the trials court's inherent powers. *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,* 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.,* 760 F.2d 1045, 1049 (9th Cir. 1985).

### III. Discussion

#### A. IPS Group's Relationship with Mintz

On September 23, 2011, IPS Group engaged Mintz to represent it in "general corporate matters." [Doc No.71-2, Ex. A at 3.] The firm required an advance payment from IPS Group, as a new client, of $5000 at the commencement of the engagement. There is no indication that after this advance payment was exhausted IPS Group was required to maintain a retainer amount, but rather going forward projects were billed as work was requested and provided. [*Id.*, Ex. A at 4.]

From September 23, 2011 to March 5, 2012, only one Mintz corporate attorney, Edith Bauer, billed for services to IPS Group. [*Id.*, Ex. B at 13-37.] She provided legal advice and prepared documents regarding a promissory note and warrant purchase agreement and shareholder consents. [*Id.*] Billing records reflect that she attended one Board Meeting on November 1, 2011, for approximately 1.2 hours.[2] On May 10-11, 2012, Ms. Bauer performed her last service for IPS Group, finalizing an equity confirmation letter and forwarding it to an auditor. [Doc. No. 71-2, Ex. C at 44-45.]

There is no evidence Ms. Bauer provided any other legal services to IPS Group after May, 2012. Ms. Bauer recorded approximately 20 hours of total time providing legal

---

[2] Ms. Bauer states in her declaration she believes she attended at least one additional board meeting but could not recall any dates. [Doc. No. 69-8, ¶ 2.] No other meeting attendance is reflected in her billing statements and no other specific meeting is identified by IPS Group.

4

services to IPS Group during those eight months.  She did not perform any intellectual property or litigation work for IPS Group.  [Doc. No. 69-8 at ¶ 3.]  Ms. Bauer left Mintz on March 29, 2013.  [*Id*. at ¶ 2.]

After May, 2012, when Ms. Bauer last performed any legal service for IPS Group, there is no record that any other Mintz attorney ever participated in a board meeting in any capacity.  No other Mintz attorney was requested to provide legal advice or service on a general corporate matter until October, 2013.

On October 17, 2013, Mintz attorney Melanie Levy[3] assisted IPS with a stock transfer issue that involved less than one hour of attorney time.  [Doc No. 71-2, Ex. C at 56-58.]  Ms. Levy provided attorney services again from January 8, 2014 to February 10, 2014, related to a potential equity-financing round.  She consulted briefly with two other Mintz attorneys in the course of her work, Eddie Rodriguez[4] and Sebastian Lucier.  Less than 13 hours total was billed on the project.  [Doc. No. 71-2, Ex. C at 66-65; Doc No. 71-3, ¶¶ 4-10.]  Ms. Levy's work necessitated the review of certain corporate documents but did not involve any in-depth review of IPS Group's capitalization structure, material agreements, intellectual property portfolio or business plans.  [*Id*. at ¶ 6.]  The billing entries do not reflect any meetings with IPS Group's management, attendance at board meetings or consultation regarding IPS Group's intellectual property or competitive business strategies.

The records indicate that only two other Mintz attorney ever provided services to IPS Group. Between March 27, 2012 and April 20, 2012, Mintz attorney Mitch Danzig, who specializes in employment and commercial litigation, represented IPS Group in a dispute regarding the quality of goods IPS Group received from a supplier.  The matter was resolved without litigation and did not involve intellectual property.  Mr. Danzig provided

---

[3] Ms. Levy's name was Melanie Ruthrauff at the relevant times.  [Doc. No. 71-3 at fn. 1.]
[4] Mr. Rodriguez resigned from Mintz effective January 9, 2017.  [Doc. No. 71-1 at ¶ 11.]

no further services beyond this specific matter which ended in April 2012 and incurred less than 10 hours of attorney time. [Doc. No. 71-2, Ex. B at 33-37, Ex. C at 39-43.]

On May 12, 2016, Mintz attorney Jenna Stewart[5] provided advice to a Mintz legal assistant finalizing the update of the IPS stock ledger to facilitate the opening of a bank account in the United Kingdom, for which she billed one-tenth-of-an hour. [Doc. No. 72, ¶ 3; Doc. No. 71-2, Ex. C at 79-81.] There is no record of Ms. Shaffer having had any other interaction with IPS Group on any other matter or having consulted with anyone at IPS Group, having any knowledge about IPS Group's intellectual property, business plans or business strategies.

In summary, there is no record of a Mintz attorney being asked to or providing any significant legal service to IPS Group after February, 2014. There is no record or evidence of any ongoing or regular communication between IPS Group and any Mintz attorneys after Ms. Levy completed her 2014 project. In its motion, IPS Group does not identify any ongoing or current representation by a Mintz attorney on its behalf.

The most recent work done for IPS Group by the Mintz firm was performed by Mintz legal assistants Joan Raulston and Leandro Alcantara. Between February, 2012 and November, 2016, Ms. Raulston and Mr. Alcantara provided sporadic administrative support to IPS Group. Ms. Raulston's work included assistance with responses to audit letters, preparing stock certificates and updating the stock ledger and corporate records to reflect the changes. [Doc. No. 71-4 at ¶¶ 2-7.] Ms. Raulston provided a total of 2.5 hours of clerical support in 2012; 3.2 hours in 2013; 5.0 hours in 2014; no support in 2015; and 2.2 hours in 2016, ending in May of 2016. [Doc No. 71-1, Exs. B and C.]

Mr. Alcantara's work consisted of the preparation of stock transfer letters, stock certificates and updating the stock ledger and corporate records to reflect the changes. He provided a total of 4.4 hours of clerical support starting in July, 2016 and ending in November, 2016. [*Id*., Ex. C.] On November 18, 2016, Mr. Alcantara made an update to

---

[5] Ms. Stewart's name was Jenna Shaffer at the relevant time. [Doc. No. 72, fn. 1.]

the stock register at the direction of Brian Webber, General Counsel for IPS Group, and forwarded the stock ledger to Mr. Webber. [Doc. No. 64-11, Ex. 1.] Mr. Alcantara provided no other support to IPS Group and resigned from Mintz effective May 2, 2017. [Doc. No. 71-1 at ¶10.]

The non-lawyer, administrative support provided by Mintz to IPS Group does not appear to have been an ongoing assignment or project performed at regular and expected intervals, but rather sporadic requests for administrative assistance to update documents that required no legal analysis or advice. There were substantial stretches, including all of 2015, when there was no contact between IPS Group and the Mintz firm. There was no communication between IPS Group and the Mintz firm from November, 2016 until May, 2017 when Mr. Webber sent an email to Mr. Alcantara (who at the time was no longer with Mintz) requesting a copy of the IPS stock ledger. Ms. Raulston responded by re-sending the ledger Mr. Alcantara sent in November without modification or change.

**B. No Concurrent Representation**

The records do not support IPS Group's characterization of the Mintz firm as its current "corporate counsel." There is no indication that after February, 2014 anyone at IPS Group directly communicated with a Mintz attorney with regard to any matter whatsoever. There is no evidence that any Mintz attorney was providing any ongoing transactional or litigation legal advice or service to IPS Group when the defendants retained Mintz in this litigation.

Mr. Webber, the plaintiff's general counsel since May of 2015, does not identify any Mintz attorney with whom he has ever communicated. [Doc. Nos. 64-10, 77-1.] His communications were limited to instructing Mintz non-lawyers to update corporate records at his direction on a number of occasions in 2016. His conclusory declaration that unspecified Mintz attorneys obtained confidential information regarding IPS products through board meeting attendance and projects is both without personal knowledge and contradicted by the evidence.

The declaration of David King, IPS Group's CEO [Doc. No. 64-7], identifies Ms. Bauer's presence at a single board meeting in November, 2011, during which there was a discussion of certain technical and business matters. However, he does not identify her participation as involving anything other than the warrant purchase agreement. His declaration does not contradict the evidence that she was not involved in intellectual property matters or competitive business strategies. Further, she had no interaction with IPS Group after May, 2012, and left Mintz in March, 2013.

Mr. King identifies no other Mintz attorney who ever attended any board meeting, had any exposure to intellectual property or business competition strategies. His statements that Mintz attorneys obtained confidential information regarding IPS products through attendance at board meetings and projects is not supported by any evidence.

Mintz has certain IPS Group documents related to stock transactions, and its legal assistants provided sporadic administrative support to Mr. Webber in 2016 regarding stock transfers. The requests do not demonstrate either a continuing obligation or expectation of an ongoing attorney-client relationship. After November 2016, Mintz had no current project for the IPS Group.

Based on the records provided the Court finds that there was no simultaneous representation of IPS Group and the Defendants in this case. Mintz was not required to notify IPS Group and obtain its written consent to accept representation of the Defendants.

**C. Successive Representation**

With regard to the successive representation of the Defendants, IPS Group has not met its burden to demonstrate a substantial relationship between the subjects of the prior and current representations. Although IPS Group makes sweeping assertions of broad exposure to its confidential business strategies and intellectual property matters through six years of engagement, the records reflect isolated business transaction work involving primarily stock warrants and equity financing, totaling less than 35 hours of actual attorney time ending in 2014.

There are representations that confidential information material to the evaluation and accomplishment of Mintz' former representation of IPS Group is material to factual and legal issues involved in the evaluation, prosecution, settlement or accomplishment of the current representation. There is no substantive support for these conclusions. The records do not evidence that Mintz attorneys in 2011-2014 were privy to confidential factual and legal issues that are material to this litigation. The more current administrative tasks performed by Mintz non-lawyer staff in 2016 are even more remote in relevance to this patent litigation.

## IV. Conclusion

The Court finds that IPS Group has not met its burden to demonstrate that Mintz' representation of the Defendants in this litigation violates the standards governing either concurrent or successive representation. The motion is therefore **DENIED**.

It is **SO ORDERED**.

Dated: October 17, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge