Eric J. Eastham (SBN 261048)
ejeastham@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile:  (858) 314-1501

Keith P. Carroll (admitted *pro hac vice*)
kpcarroll@mintz.com
William A. Meunier (admitted *pro hac vice*)
wameunier@mintz.com
Michael T. Renaud (admitted *pro hac vice*)
mtrenaud@mintz.com
Peter J. Cuomo (admitted *pro hac vice*)
pjcuomo@mintz.com
Tiffany M. Knapp (admitted *pro hac vice*)
tknapp@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
1 Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Attorneys for Defendants CivicSmart, Inc.,
Duncan Parking Technologies, Inc.
and Duncan Solutions, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPS GROUP, INC<br><br>Plaintiff<br><br>v.<br><br>CIVICSMART, INC., DUNCAN PARKING TECHNOLOGIES, INC., and DUNCAN SOLUTIONS, INC,<br><br>Defendants. | Case No. 3-17-cv-00632-CAB (MDD)<br><br>**DEFENDANTS' ANSWER, SEPARATE DEFENSES AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Defendants CivicSmart, Inc., Duncan Parking Technologies, Inc., and Duncan Solutions, Inc., for their Answer, Affirmative Defenses, and Counterclaims, by and through undersigned counsel, answers the numbered paragraphs of the Plaintiff's First Amended Complaint and further states as follows:

## AS TO THE PARTIES

1.     Plaintiff IPS Group is a Pennsylvania corporation with its principal place of business and corporate headquarters at 7737 Kenamar Ct., San Diego, California 92121.

**Defendants' Answer:** Admitted.

2.     Upon information and belief, Defendant CivicSmart, Inc. ("CivicSmart") is a Delaware corporation having a principal place of business at 316 N. Milwaukee Street, Suite 202, Milwaukee, Wisconsin 53202.

**Defendants' Answer:** Admitted.

3.     Upon information and belief, Defendant Duncan Parking Technologies, Inc. ("DPT") is a Delaware corporation having a principal place of business at 316 N. Milwaukee Street, Suite 202, Milwaukee, Wisconsin 53202.

**Defendants' Answer:** Admitted.

4.     Upon information and belief, Defendant Duncan Solutions, Inc. ("DSI") is a California corporation having a principal place of business at 633 West Wisconsin Avenue, Suite 1600, Milwaukee, Wisconsin 53203.

**Defendants' Answer:** Admitted.

5.     Upon information and belief, prior to August 2015, DSI and DPT operated as alter egos of one another.  Specifically, on information and belief, prior to August 2015 DSI controlled DPT to such a degree as to render DPT merely an instrumentality of DSI.  *See* Ex. 7 (Duncan Parking's February 7, 2014 Response to Worcester, MA's Request for Proposal) at Page 86 ("This response is presented by Duncan Parking Technologies, Inc., a wholly-owned and controlled subsidiary of

Duncan Solutions, Inc. For simplicity, we routinely refer to our company as 'Duncan Solutions' or 'Duncan.'").  DSI and DPT acted as a single entity with the shared purpose of selling infringing meters, and even encouraged potential customers to disregard their separate corporate identities.  *See id.*  In some instances, DSI held itself out as though it were the entity selling Liberty Meter, even though—if the parties observed their separate corporate forms—DPT would have been the entity selling the Liberty Meter.  On information and belief, in submitting bids and providing services related to infringing meters, DSI and DPT personnel worked together as though they were a single entity, commingling funds and assets— including both personnel and other tangible assets such as machinery, design plans, and software—with the shared goal of making, using, selling, and offering to sell a single infringing product, the Liberty Meter.  Because of this unity of interest between DSI and DPT prior to August 2015, it would be an inequitable result if DPT and DSI were treated as separate corporations.  In particular, for sales of the Liberty Meter before August 2015, it would be difficult or impossible to apportion liability to one entity or the other because DSI and DPT acted as a single enterprise in making, using, selling, and offering to sell a single infringing product, the Liberty Meter.

**Defendants' Answer:** Denied.

6.      Upon information and belief, since August 2015, DPT and CivicSmart have operated as alter egos of one another.  Specifically, on information and belief, after August 2015 CivicSmart controlled DPT to such a degree as to render DPT merely an instrumentality of CivicSmart.  For example, since August 2015, DPT and CivicSmart have shared the same office locations and shared overlapping officers. Also, on information and belief, DPT is a wholly-owned subsidiary of CivicSmart. On information and belief, in submitting bids and providing services related to infringing meters, CivicSmart and DPT personnel worked together as though they were a single entity, commingling funds and assets—including both personnel and

1  other tangible assets such as machinery, design plans, and software—with the shared
2  goal of making, using, selling, and offering to sell a single infringing product, the
3  Liberty Meter.  Because of this unity of interest between DPT and CivicSmart after
4  August 2015, it would be an inequitable result if DPT and CivicSmart were treated as
5  separate corporations.  In particular, for sales of the Liberty Meter before August
6  2015, it would be difficult or impossible to apportion liability to one entity or the
7  other because CivicSmart and DPT acted as a single enterprise in making, using,
8  selling, and offering to sell a single infringing product, the Liberty Meter

9  **Defendants' Answer:** Denied.

10                        <u>**AS TO JURISDICTION AND VENUE**</u>

11       7.     This is an action for, *inter alia*, patent infringement.  This Court has
12  subject matter jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 and
13  1338(a), because this action involves a claim arising under the patent laws of the
14  United States, 35 U.S.C. §§ 101, *et seq.*

15  **Defendants' Answer:** Defendants admit that IPS Group's First Amended Complaint
16  purports to assert claims for patent infringement.  The remainder of this paragraph
17  states legal conclusions to which no response is required.  To the extent this
18  paragraph contains any further allegations of fact to which a response is required,
19  denied.

20       8.     This Court may exercise personal jurisdiction over DSI because DSI has
21  continuous and systematic contacts with the State of California and, on information
22  and belief, conducts regular business in this District. For example, on information and
23  belief DSI is incorporated in California.

24  **Defendants' Answer:** Admitted that DSI is incorporated in California.  DSI does not
25  contest personal jurisdiction for the purposes of this action only.  The remainder of
26  this paragraph states legal conclusions to which no response is required.  To the

27
28
                                           3

extent this paragraph contains any further allegations of fact to which a response is required, denied.

9.     This Court may exercise personal jurisdiction over DPT because DPT has continuous and systematic contacts with the State of California and, on information and belief, does business in this District. Upon information and belief, DPT is registered to do business in California, with its agent located at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California 95833, and, on information and belief, regularly conducts business within California by offering for sale and selling products and systems within California. Also, during the time period for which IPS Group alleges that DPT willfully infringed IPS Group's patents, DPT maintains or did maintain a place of business within this District located at 5924 Balfour Court #102 Carlsbad, California 92008. Moreover, at one time DPT was a wholly-owned subsidiary of, and acted on behalf of, DSI (on information and belief, a California corporation). Likewise, DPT has purposefully directed its infringing activities into California and this District; for example, DPT has made, used, sold, offered for sale, or imported in California (and, on information and belief, in this District) the products that are the subject of IPS Group's claims.

**Defendants' Answer:** Admitted that DPT is registered to do business in California and that its agent is located at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California 92008.  Admitted that DPT maintained a place of business within this District at 5924 Balfour Court #102, Carlsbad, California 92008, that was closed in November 2015.  Admitted that, until July 30, 2015, DPT was a wholly-owned subsidiary of DSI.  DPT does not contest personal jurisdiction for the purposes of this action only.  The remainder of this paragraph states legal conclusions to which no response is required.  To the extent this paragraph contains any further allegations of fact to which a response is required, denied.

10.    This Court may exercise personal jurisdiction over CivicSmart at least because CivicSmart has continuous and systematic contacts within the State of California by, among other things, conducting regular business in California. Likewise, CivicSmart purposefully directed its infringing activities into California and this District; for example, on information and belief CivicSmart has made, used, sold, offered for sale, or imported in California (and this District) the products that are the subject of IPS Group's claims. On information and belief, during the time period for which IPS Group alleges that CivicSmart willfully infringed IPS Group's patents, CivicSmart—through its alter ego DPT—maintained or maintains a regular and established place of business in this District, such as at 5924 Balfour Court #102 Carlsbad, California 92008.

**Defendants' Answer:** This paragraph states legal conclusions to which no response is required.  CivicSmart does not contest personal jurisdiction for the purposes of this action only.  To the extent this paragraph contains any allegations of fact to which a response is required, denied.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because each defendant resides here or has committed acts of infringement and has a regular and established place of business here. For example, on information and belief DSI is incorporated in California. Likewise, on information and belief, during the period of infringement DPT and CivicSmart committed acts of infringement in this district and maintained a regular and established place of business in Carlsbad, CA as alleged above.

**Defendants' Answer:** As set forth in the Defendants' Motion to Dismiss the First Amended Complaint, ECF. No. 41, denied.  Defendants are, however, bound by the Court's order of October 25, 2017, ECF No. 80, as the law of this case.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and/or (d) because, *inter alia,* each Defendant is subject to personal jurisdiction in

1  this District, Plaintiff IPS Group is headquartered in this District, and key witnesses

2  reside in this District. Likewise, given that IPS Group is headquartered in San Diego,

3  California, this District and the State of California have a sufficient interest in

4  resolving this dispute.

5  **Defendants' Answer:** As set forth in the Defendants' Motion to Dismiss the First

6  Amended Complaint, ECF. No. 41, denied. Defendants are, however, bound by the

7  Court's order of October 25, 2017, ECF No. 80, as the law of this case.

8  **AS TO FACTUAL BACKGROUND**

9  **A.     As to IPS Group and Its Purportedly Patented Technology**

10     13.     San Diego-based IPS Group is a design, engineering, and manufacturing

11  company focused on low power wireless communications and parking technologies.

12  IPS Group manufactures locally and has been delivering world-class solutions to the

13  telecommunications and parking industries for over 19 years. The company is best

14  known for its patented credit card enabled, solar powered single-space parking meter

15  and web-based management system.

16  **Defendants' Answer:** Defendants are without knowledge or information sufficient to

17  form a belief as to the truth of the allegations contained in paragraph 13 and therefore

18  deny them.

19     14.     In the mid-2000s, IPS Group invented a revolutionary type of single-

20  space electronic parking meter that (a) permits payment by cash or credit card, (b) is

21  wireless, and (c) is solar-powered. IPS Group and its technology have fundamentally

22  altered the field of parking meters, which, prior to IPS Group's invention, lacked a

23  commercially viable single-space option with credit card payment. IPS Group's

24  technology was even presented in an episode of The History Channel's show

25

26

27

28

1  "Modern Marvels."[1]  IPS Group has also received over a dozen patents on its parking
2  meters and related technology.

3  **Defendants' Answer:** Defendants are without knowledge or information sufficient to
4  form a belief as to the truth of the allegations of paragraph 14 and therefore deny
5  them.

6       15.    IPS Group has also received significant industry praise for its patented
7  technology. For example, IPS Group and its technology were awarded the Australia
8  Design Award 2009, the Tech American Green Technology Award (San Diego
9  chapter), and the United States Conference of Mayors Award of Excellence in 2012.

10  **Defendants' Answer:** Defendants are without knowledge or information sufficient to
11  form a belief as to the truth of the allegations of paragraph 15 and therefore deny
12  them.

13      16.    IPS Group's patented technology has revolutionized the industry of
14  single-space parking meters. IPS Group's first commercial sale of products
15  embodying its patented technology occurred in 2008. Since that time, IPS Group has
16  sold over 250,000 meters incorporating its patented technology throughout the United
17  States. IPS Group's patented meters can also be found throughout North America,
18  including both Canada and Mexico.

19  **Defendants' Answer:** Defendants are without knowledge or information sufficient to
20  form a belief as to the truth of the allegations of paragraph 16 and therefore deny
21  them.

22      17.    The enormous success that IPS Group has enjoyed through its patented
23  technology comes because its meters successfully combine critical elements such as
24  (a) the ability to purchase parking meter time via coin, credit card, and other non-cash

25
26  _____
27      [1] "Coin Operated," Original air date July 24, 2008. Full episode available at
    http://www.history.com/shows/modern-marvels/season-14/episode-22.
28
                                        7

1    means (such as pay-by-phone or payment via an electronic purse), (b) efficient power

2    management using solar panels, and (c) a housing designed to be retrofitted into

3    municipalities' existing single-space meter housing infrastructure.

4    **Defendants' Answer:** Defendants are without knowledge or information sufficient to

5    form a belief as to the truth of the allegations of paragraph 17 and therefore deny

6    them.

7        18.    Municipalities switching to IPS Group's patented technology have

8    reported increased revenues, reduced citizen complaints, and fewer contested ticket

9    citations. For example, after switching to IPS Group's patented technology, Denver

10   saw a surprising increase in parking meter revenue of more than $1.5 million

11   annually. The City of Los Angeles reported an annual net increase of $3 million after

12   switching to IPS Group's patented meters.

13   **Defendants' Answer:** Defendants are without knowledge or information sufficient to

14   form a belief as to the truth of the allegations of paragraph 18 and therefore deny

15   them.

16       **B.    As to the Patents-in-Suit**

17       19.    On December 21, 2010, the United States Patent & Trademark Office

18   ("PTO") duly and lawfully issued U.S. Patent No. 7,854,310, entitled "Parking

19   Meter" ("the '310 Patent"). IPS Group is the sole owner by assignment of the '310

20   Patent, a copy of which is attached hereto as **Exhibit 1.**

21   **Defendants' Answer:** Defendants admit that IPS Group purports to have attached as

22   Exhibit 1 a copy of U.S. Patent No. 7,854,310 ("the '310 patent") entitled "Parking

23   Meter" which lists an issue date of December 21, 2010 and is assigned on its face to

24   IPS Group.  Defendants deny that the '310 Patent was "duly and lawfully issued."

25   Defendants lack knowledge or information sufficient to form a belief as to the truth of

26   the remaining allegations of Paragraph 19, and therefore deny them.

27

28

8

20.    On August 20, 2013, the PTO duly and lawfully issued U.S. Patent No. 8,513,832, entitled "Power Supply Unit" ("the '832 Patent"). IPS Group is the sole owner by assignment of the '832 Patent, a copy of which is attached hereto as **Exhibit 2.**

**Defendants' Answer:** Defendants admit that IPS Group purports to have attached as Exhibit 2 a copy of U.S. Patent No. 8,513,832 ("the '832 patent") which lists an issue date of August 20, 2013 and is assigned on its face to IPS Group.  Defendants deny that the '832 Patent was "duly and lawfully issued."   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 20, and therefore deny them.

21.    On November 26, 2013, the PTO duly and lawfully issued U.S. Patent No. 8,595,054, entitled "Parking Meter and a Device Therefor" ("the '054 Patent"). IPS Group is the sole owner by assignment of the '054 Patent, a copy of which is attached hereto as **Exhibit 3.**

**Defendants' Answer:** Defendants admit that IPS Group purports to have attached as Exhibit 3 a copy of U.S. Patent No. 8,595,054 ("the '054 patent") entitled "Parking Meter and a Device Therefor" which lists an issue date of August 20, 2013 and is assigned on its face to IPS Group.  Defendants deny that the '054 Patent was "duly and lawfully issued."  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21, and therefore deny them.

22.    On June 10, 2014, the PTO duly and lawfully issued U.S. Patent No. 8,749,403, entitled "Parking Meter Communications for Remote Payment with Updated Display" ("the '403 Patent"). IPS Group is the sole owner by assignment of the '403 Patent, a copy of which is attached hereto as **Exhibit 4.**

**Defendants' Answer:** Defendants admit that IPS Group purports to have attached as Exhibit 4 a copy of U.S. Patent No. 8,749,403 ("the '403 patent") entitled "Parking

9

Meter Communications for Remote Payment with Updated Display" which lists an issue date of June 10, 2014 and is assigned on its face to IPS Group. Defendants deny that the '403 Patent was "duly and lawfully issued." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22, and therefore deny them.

23. On July 12, 2016, the PTO duly and lawfully issued U.S. Patent No. 9,391,474, entitled "Power Supply Unit" ("the '474 Patent"). IPS Group is the sole owner by assignment of the '474 Patent, a copy of which is attached hereto as **Exhibit 5.**

**<u>Defendants' Answer:</u>** Defendants admit that IPS Group purports to have attached as Exhibit 5 a copy of U.S. Patent No. 9,391,474, ("the '474 patent") entitled "Power Supply Unit" which lists an issue date of July 12, 2016, and is assigned on its face to IPS Group. Defendants deny that the '474 Patent was "duly and lawfully issued." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 23, and therefore deny them.

24. On August 23, 2016, the PTO duly and lawfully issued U.S. Patent No. 9,424,691, entitled "Parking Meter Communications for Remote Payment with Updated Display" ("the '691 Patent"). IPS Group is the sole owner by assignment of the '691 Patent, a copy of which is attached hereto as **Exhibit 6.**

**<u>Defendants' Answer:</u>** Defendants admit that IPS Group purports to have attached a copy of U.S. Patent No. 9,424,691 ("the '691 patent") entitled "Parking Meter Communications for Remote Payment with Update Display" which lists an issue date of August 23, 2016 and is assigned on its face to IPS Group. Defendants deny that the '691 Patent was "duly and lawfully issued." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24, and therefore deny them.

25.    IPS Group marks its products with the above patent numbers in accordance with 35 U.S.C. §287(a).

**Defendants' Answer:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 and therefore deny them.

### C.    As to the Defendants Alleged Infringement of IPS Group's Patents

26.    Each Defendant respectively makes, uses, sells, offers to sell, and/or imports a product known as the Liberty Meter. On information and belief the Liberty Meter first entered the market in 2012, years after the priority date for each Patent-in-Suit. The Liberty Meter and its use infringe one or more claims from each Patent-in-Suit. Consequently, any making, using, selling, offering to sell, and/or importing of the Liberty Meter constitutes an act of infringement against each Patent-in-Suit.

**Defendants' Answer:** Defendants admit they market products under the Liberty Meter name and that the first product sold under the Liberty Meter name was sold in 2012.  The remainder of this paragraph states legal conclusions to which no response is required.  To the extent this paragraph contains any further allegations of fact to which a response is required, denied.

### D.    As to Duncan's Pre-Suit Knowledge of The Patents-In-Suit

27.    For the reasons discussed herein, on information and belief, each Defendant had actual pre-suit knowledge of the Asserted Patents and/or its respective applications prior to this action or willfully blinded itself to the existence of those patents. In any event, each Defendant had actual knowledge of each Asserted Patent no later than the filing of the Original Complaint in this action.

**Defendants' Answer:** Denied.

28.    CivicSmart is specifically aware of the '310 and '054 patents and has been since at least August 2015. In July 2015 IPS Group brought a lawsuit, Case No. 15-cv-1526-CAB (S.D. Cal.) ("the '1526 Action") against both DSI and DPT. In that

litigation, IPS Group alleges that both DSI and DPT infringe the '310 and '054 patents by virtue of their making, using, selling, offering to sell, and/or importing the Liberty Meter. On information and belief, either DSI or DPT (or both) informed CivicSmart of the existence of the lawsuit, of the existence of the '310 and '054 patents, and of IPS Group's specific contentions that the Liberty Meter infringes both patents.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.  To the extent this paragraph contains any further allegations of fact to which a response is required, denied.

29.     In any event, DPT's knowledge of the '310 and '054 patents and of IPS Group's allegations regarding infringement can be imputed to CivicSmart. CivicSmart is merely an alter ego of DPT and therefore DPT's knowledge is equivalent to CivicSmart's knowledge. Also, Michael Nikolaus (CivicSmart's CEO) is, on information and belief, an officer of DPT and became aware of the '310 and '054 patents as well as IPS Group's allegations of infringement shortly after IPS Group filed the '1526 Action. As CEO of CivicSmart, Mr. Nickolaus's knowledge can also be imputed to CivicSmart.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.  To the extent this paragraph contains any further allegations of fact to which a response is required, denied.

30.     Each Defendant also had pre-suit knowledge of the '832, '403, '474, and '691 patents. First, on January 10, 2017, counsel for IPS Group in the '1526 Action sent an email to the attorneys representing both DSI and DPT in the '1526 Action. In this email, IPS Group's counsel specifically identified each of the '832, '403, '474, and '691 patents. On information and belief, DSI and DPT's attorneys shared this information with their respective clients shortly after receiving it. Moreover, DPT's knowledge of the '832, '403, '474, and '691 patents can be imputed to CivicSmart for

the reasons discussed above. Further, DPT's attorneys represented that they had communicated with CivicSmart regarding the substance of the January 10, 2017 email.

**Defendants' Answer:** Denied.

31.    DSI and DPT each had knowledge of the '832, and '403 patents going back even before the January 10, 2017 email. Both DSI and DPT were made aware of the '832 and '403 Patents during the course of DSI's and DPT's prosecution of their own patents.

**Defendants' Answer:** Denied.

32.    <u>The '832 Patent</u>. For example, the face of United States Patent No. D714165, issued to DSI on September 30, 2014, cites the '832 Patent. Likewise, the face of United States Patent No. D747983, issued to DPT on January 26, 2016, also cites the '832 Patent. DSI and DPT were therefore aware of these patents at least as early as these dates. Moreover, DPT's knowledge can be imputed to CivicSmart for the reasons discussed above.

**Defendants' Answer:** This paragraph states legal conclusions to which no response is required.  To the extent this paragraph contains any allegations of fact to which a response is required, denied.

33.    <u>The '403 Patent</u>. The face of United States Patent No. 9,123,184, issued to DPT on September 1, 2015, cites the '403 Patent. On information and belief DPT was aware of the '403 Patent on or before DSI sold DPT to CivicSmart. Thus, DPT's knowledge can be imputed to DSI, as DPT's alter ego at least until DPT was sold to CivicSmart. Similarly, DPT's knowledge can also be imputed to CivicSmart for the reasons discussed above.

**Defendants' Answer:** This paragraph states legal conclusions to which no response is required.  To the extent this paragraph contains any allegations of fact to which a response is required, denied.

34.     On information and belief, DSI and DPT monitored IPS Group's patent filings. On information and belief, DSI and DPT gained knowledge of the '832, '403, '474, and '691 patents in this way. Indeed, on multiple occasions representatives from DSI and DPT made offers to acquire IPS Group and its patented technology. For example, on February 11, 2009, Anthony Kahn (a current and/or former Director for Duncan Solutions) sent an email from his email address akahn@duncansolutions.com to IPS Group's CEO David King. In this email, Mr. Kahn stated that "As I have previously said we think your (and your team's) experience and expertise would be of great value to our whole products business so a merger on appropriate terms may make most sense." Mr. Kahn also stated that "I agree your patents might slow them down but from my limited experience is that defending challenges to patent applications absorbs a lot of time and effort, costs a fortune and by the time the party successfully upholds its patent the world has changed enough so that the patents are no longer barriers." On information and belief, DSI and DPT continued to monitor IPS Group's patent application activity, including the filing and issuance of the '832, '403, '474, and '691 patents. Likewise, after the sale of DPT to CivicSmart, CivicSmart would have shared DPT's knowledge of the '832, '403, '474, and '691 patents, and based on this monitoring of IPS Group's patent application activity, was also aware of the '310 and '054 patents.

**Defendants' Answer:** Denied.

35.     The city of Milwaukee, Wisconsin issued a request for proposals for single-space smart meters. IPS Group submitted a response to this request, submitting its patented meters for consideration by Milwaukee. Also, on information and belief, CivicSmart and DPT submitted a response for the request, submitting the Liberty Meter as a candidate to be considered.

**Defendants' Answer:** Admitted that Milwaukee, Wisconsin issued a request for proposals for single-space smart meters and that CivicSmart and DPT submitted a

response for the request, submitting the Liberty Meter as a candidate to be considered. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35 and therefore deny them.

36.     On information and belief, as part of the bidding process for the Milwaukee business, CivicSmart and DPT represented to Milwaukee city employees that IPS Group admitted that a Liberty Meter with the solar panel removed would not infringe any IPS Group patents.

**Defendants' Answer:** Denied.

37.     IPS has never stated in Court during any legal proceeding or elsewhere that the removal of the solar panel from the Liberty meter would avoid infringement of IPS Group's patents.

**Defendants' Answer:** Denied.

38.     CivicSmart's / DPT's statement is demonstrably false. The patents at suit in this litigation clearly show claims for parking meters and their respective components that do not require a solar panel. *See, e.g.,* the '832 patent (claim 1), the '403 patent (claim 1), and the '474 patent (claim 18), the '691 patent (claim 1).

**Defendants' Answer:** This paragraph states legal conclusions to which no response is required. To the extent this paragraph contains any allegations of fact to which a response is required, denied.

39.     On information and belief, in reliance on CivicSmart's / DPT's untrue statements, the City of Milwaukee began using the Liberty Meter.

**Defendants' Answer:** Denied.

40.     On information and belief, CivicSmart and DPT have continued to make false and misleading statements about IPS Group. CivicSmart and DPT have approached customers and potential customers with false and deceptive messages

15

alleging that IPS Group has admitted that a Liberty Meter without a solar panel does not infringe IPS Group's patents.

**Defendants' Answer:** Denied.

41.     CivicSmart and DPT know that these statements are not true. Both CivicSmart and DPT are well aware – and have been since before the filing of this litigation – that IPS Group believes a Liberty Meter without a solar panel still infringes IPS Group's patents.

**Defendants' Answer:** Denied.

### AS TO INFRINGEMENT OF THE PATENTS-IN-SUIT

42.     Any act of making, using, offering to sell, selling, and/or of importing the Liberty Meter directly infringes one or more claims of the Patents-in-Suit.

**Defendants' Answer:** Denied.

43.     With respect to the '054 Patent, the Liberty Meter infringes at least Claim 1. The Liberty Meter is a parking meter device. *See, e.g.,* Ex. 8 (Duncan Solutions' May 2, 2013 Response to Durango, CO's Request for Proposal) at Page 246. The Liberty Meter practices each element of claim 1. For example:

   a. A timer. Specifically, the Liberty Meter includes a timer that displays the time purchased and/or remaining. *See, e.g.,* Ex. 7 at 165. *See, also,* Ex. 8 at 246.

   b. A payment facilitating arrangement operable in cooperation with a non-cash payment medium for effecting payment of a monetary amount for a parking period. The Liberty Meter includes electronic / mechanical structures that include a card access opening and a card reader or card writer, including "secure PCI-compliant credit processing." *See* Ex. 7 at 188. *See, also, e.g.,* Ex. 8 at 246. These electronic / mechanical structures are operable in cooperation with a non-cash payment medium for effecting payment of a monetary

16

amount for a parking period, as is demonstrated by the fact that a motorist may pay for parking using either a credit card or a pay-by-phone option. Ex. 7 at 164 (section entitled "Pay-by-Cell Phone Payments"). Duncan advertised the Liberty Meter as "[f]eaturing advanced credit card acceptance, solar power and wireless real-time communication." Ex. 8 at 296. Duncan's marketing materials state that the Liberty Meter "[a]ccepts coins, credit cards, debit cards, smart cards and pay-by-cell payment" and has a "[p]ay-by-cell option with payment visible at the meter." *Id.* at 297. *See also* Ex. 7 at 165.

c. A display that visually provides a balance remaining of the parking period and wherein the display provides the amount of time purchased in response to the received input from the user. Specifically, the Liberty Meter "shall display the time purchased…valid parking time and/or grace period and/or expired by way of a variable colored lighting solution for ease of recognition." *See, e.g.,* Ex. 8 at 251-252.

d. A power management facility that supplies power to the timer, payment facilitating arrangement, and display. Specifically, the Liberty Meter is advertised to be "[s]olar powered with rechargeable battery pack for extended life" and includes "[i]ntelligent software to minimize power consumption." Ex. 8 at 297. *See, also, e.g., id.* at 246, 249, 251, 255, 257. In particular, the Liberty Meter includes circuitry and/or software that, at the very least, can manage the amount of power delivered to the meter's backlit screen "when the meter is not in use." Ex. 7 at 166. Likewise, this circuitry and/or software is capable of minimizing power consumption by "disabling the enforcement LED lights on the sides of the display." *Id.*

17

e. A wireless communications subsystem configured to receive information relating to the non-cash payment medium in respect of the payment facilitating arrangement. The Liberty Meter is advertised as "[f]eaturing advanced credit card acceptance, solar power and wireless real-time communication." *See, e.g.,* Ex. 7 at 164, 169. The Liberty Meter has wireless communication components that allow it to "[a]ccept[] coins, credit cards, debit cards, smart cards and pay-by-cell payment." The payment apparatus necessarily includes wireless components because there is a "[p]ay-by-cell option with payment visible at the meter." Ex. 8 at 297. *See, also, e.g., id.* at 246, 249.

f. A keypad sensor that receives input comprising manipulation by the user and wherein the keypad sensor operates the parking meter and determines parking time amount for purchase in accordance with the received input from the user. Specifically, the Liberty Meter has a "[t]actile key panel with four buttons for intuitive payment navigation." *Id.* at 297. *See, also, e.g., id.* at 246.

g. A coin slot into which coins are inserted for delivery to the coin sensor and then to a coin receptacle. Specifically, the Liberty Meter is advertised as having a "coin chute" that "[a]ccepts up to sixteen different coins and/or metal tokens through a single slot" and has [a]dvanced coin track sensors for self-calibration and detection of non-metallic jams." Ex. 8 at 297. This coin chute leads to a "[c]oin box retainer" that "ensures proper replacement and alignment of the coin box to receive coins before the vault doors is re-locked." *Id.* at 191. *See, also, e.g., id.* at 246; Ex. 7 at 164 (section entitled "Coin Validator") . Moreover, the "receptacle is designed to receive sealed and locked coin boxes" from the Liberty Meter. Ex. 7 at 219.

h. An upper portion with a solar panel that charges the power management facility (*see, e.g., id.* at 246, 249, 251, 255, 257.), and a lower portion that has a shape and dimensions such that the lower portion is receivable within the housing base (*see, e.g., id.* at 296-297), where the upper portion contains a cover configured to accommodate the upper portion and that is engageable with the housing base of the single space parking meter such that the payment facilitating arrangement is accessible by the user for user manipulation effecting the payment of the monetary amount for the parking period when the lower portion of the parking meter device is received within the housing base and the upper portion is covered by the cover. The Liberty Meter has both a lower portion and an upper portion. In particular, the fact that portions of the Liberty Meter device typically extend outside the housing base when it is received does not mean that the lower portion of the device does not have shape and dimensions such that it is receivable within a housing base. The Liberty Meter contains a lower portion with shape and dimensions such that it is received within the housing base and an upper portion extending above the portion of the meter that is received within the housing base. *See, e.g.,* Ex. 7 at 161, 170, 191.

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

44. With respect to the '310 Patent, the Liberty Meter infringes at least Claim 1. The Liberty Meter is a parking meter device. (*See, e.g.,* Exhibit 8 at 246.) The Liberty Meter meets each element of claim 1. For example:

a. A coin sensor. Specifically, the Liberty Meter includes a coin validator which includes a coin sensor. The Liberty Meter "[a]ccepts coins, credit cards, debit cards, smart cards, and pay-by-cell payment

1    . . . Accepts up to sixteen different coins and/or metal tokens through
2    a single slot . . . Coin chute is easily and quickly field services;
3    vandal resistant coin slot … advanced coin track is self-calibration . .
4    . detects metallic and non-metallic jams." *See, e.g., id.* at 297.

5    b.  A card reader electrically linked to provide information to the
6        electronic device to provide information of whether payment has
7        been made. The Liberty Meter includes a card reader. *See, e.g., id.* at
8        246. Specifically, "one card slot functions for credit, debit, and smart
9        card payments. The user simply inserts the card and withdraws it
10       quickly. Once read, the meter displays a default amount of time,
11       predetermined by the City. The motorist can use the up and down
12       arrow keys to increase the amount of time to the maximum allowed,
13       or decrease the amount of time. Pressing the 'OK' button confirms
14       the transaction, while the 'C/Cancel' button completely clears it from
15       the meter." *See also id.* at 251 ("Meters shall have replaceable
16       faceplates describing payment options (credit card, coins, smart
17       cards, pay be cell)"); *id.* at 252 ("All Parking Meter solutions shall
18       accept smart cards (standard and customized)"). The Liberty Meter's
19       card reader accepts a variety of payments, including various credit
20       and debit cards. *See* Ex. 7 at 163.

21   c.  An electronic device connected to the coin sensor and the card reader
22       that may receive information electronically therefrom (e.g. whether a
23       coin or a card has been inserted). Specifically, the Liberty Meter can
24       receive information from the coin sensor regarding a jam. Ex. 7 at
25       164. The coin sensor sends other information the electronic device,
26       relating to the validity or invalidity of items inserted into the coin
27       slot. *Id.* The card reader also sends information including the type of

28

20

information necessary to make a credit card transaction and receive authorization, and whether the card is inserted or if there is an obstruction in the card slot. *See, id.,* at 165.

d. The electronic device having a screen that provides information visually and is visible through the window of the control panel when the cover panel is attached to the intermediate panel. Specifically, the Liberty Meter touts its high-resolution display as being "easy to read and highly customizable benefiting both the motorists who park at the meter and the technicians who perform maintenance on the meters." Ex. 7 at 144. Moreover, the Liberty Meter is described as being "custom programmed to communicate the City's rates and parking hours. It walks the motorist through the payment with a clear, step-by-step process; ensuring greater motorist compliance to the City's parking ordinances. For meter technicians, excellent screen visibility makes it easier for them to perform required maintenance and quickly return the meter to normal operation." *Id. See also, e.g.* Ex. 8 at 251-252, 296;

e. a telephone connection (*e.g.* cellular) to provide receiving information in respect of a card used in respect of said card reader. Specifically, the Liberty Meter allows the cardholder to elect a credit/debit transaction and swipe the card at the meter. The transaction information is sent by a wireless communications provider such as AT&T, Verizon, or T-Mobile to the gateway via secure VPN (Virtual Private Network). Gateway providers that Duncan has worked with include Merchant First, Caledon, and Paypal. Ex. 7 at 169. *See also, e.g.,* Ex. 8 at 246, 249.

f.  connections for at least one rechargeable battery to power the reader, sensor and device. Specifically, the Liberty Meter "must be solar powered and shall use solar panel and combination rechargeable/back-up battery pack to provide ongoing power and backup power." Ex. 7 at 162. *See also, e.g., id.* at 166, Ex. 8 at 246, 249, 251, 255, 257.

g.  a solar cell operatively associated with said connections to charge said battery. Specifically, Duncan advertised that the Liberty Meter is "[s]olar powered with rechargeable battery for extended battery life." Ex. 8 at 297. *See, also, e.g.,* Ex. 8 at 246, 249, 251, 255, 257; Ex. 7 sections "2.A.3 Solar/Battery" and "Fully Rechargeable Battery").

h.  a housing in which the coin sensor, card reader, and electronic device are located, the housing comprising an intermediate panel set and a cover panel, wherein the cover panel is movably attached to the intermediate panel set, and a surface of the cover panel and a surface of the intermediate panel set comprise a front face, and the front face surface of the cover panel includes a control panel having a window and a plurality of buttons that operate the parking meter upon manipulation by a user. To be operable, the Liberty Meter is installed in a housing that meets the requirements of this element. *See, e.g.,* Ex. 8. at 296-297 (the image on page 296 showing the housing with a cover panel, intermediate panel set, front face, control panel and window, and plurality of buttons.) The following image depicts how the Liberty Meter literally meets this element:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17  Additionally, even if this limitation is not literally met (and it is), the

18  Liberty Meter still infringes this element under the doctrine of

19  equivalents, as a change and the previse configuration and location of

20  the various components – such as the exact location of the plurality of

21  buttons – is merely an insubstantial difference. Indeed, a difference in

22  the location of the buttons (such as, for example, being located on the

23  front face of the intermediate panel or on the electronic device instead

24  of the front face of the cover panel) is substantial because the buttons

25  perform substantially the same function, in substantially the same

26  way, to achieve substantially the same result as the literal language of

27  the claims.

28

i. A coin slot in the front face into which coins are inserted for delivery to the sensor and then to a coin receptacle. The Liberty Meter includes components that comprise the free-fall coin chute. *See, e.g.,* Ex. 8 at 296- 297.

j. A card slot in the front face into which a card is inserted to be read by said reader. Specifically, to "complete a payment, the motorist inserts and withdrawals their credit card, uses the [up and do] arrows to increase or decrease the amount of parking time." Ex. 7 at 165.

k. A rear face comprising a surface of the cover panel and a surface of the intermediate panel set providing a window aperture via which said solar cell is exposed to light. Specifically, the rear face of the Liberty Meter includes a window aperture via which solar cells are exposed to light. Exhibit 7 at 161. *See also, id.* at 166 ("[t]wo solar panels, one on each side of the mechanism, provide power to the Liberty. Fully secure under the meter dome, these solar panels allow minimum power absorption") and 196 (discussing manufacturing of UV –resistant, high impact polycarbonate material).

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

45. With respect to the '832 Patent, the Liberty Meter infringes at least Claim 1. The Liberty Meter contains a power supply unit that supplies power to the Liberty Meter. The Liberty Meter's power supply unit meets each element of claim 1. For example, the Liberty Meter includes:

a. A rechargeable, main battery. Specifically, the Liberty Meter is required to "clearly display a low battery condition when this situation occurs and/or failing/low rechargeable batteries in the case of the solar batteries used in the cellular wireless credit card enabled meter system…" Ex. 8 at 251. Moreover, the Liberty Meter contains

a "solar rechargeable battery system," which has "an independent backup battery system." *Id.* at 255. *See also id.* at 296 ("Solar powered with rechargeable battery for extended battery life."); *id.* at 297 ("solar powered with rechargeable and backup batteries for extended life"); Ex. 7 at 162 ("The Liberty utilizes two solar panels and a rechargeable/back-up battery pack."); *id.* at 166 ("Two solar panel, one on each side of the mechanism, provide power to the Liberty . . . Rechargeable batteries and a backup battery fully operate the mechanism independently of the other. Because Liberty Meter includes a rechargeable, main battery, it meets this element of the claim.

b. A charging arrangement for charging the main battery. Specifically, the Liberty Meter contains solar panels which recharge the main battery. For example, the Liberty Meters contain "protected, recharging solar panel(s), to allow solar charging regardless of meter location relative to the sun." Ex. 8 at 255. *See also id.* at 296 ("Solar powered with rechargeable battery for extended battery life."); *id.* at 297 ("solar powered with rechargeable and backup batteries for extended life"); Ex. 7 at 166 ("Two solar panels, one on each side of the mechanism, provide power to the Liberty . . . Rechargeable batteries and a backup battery fully operate the mechanism independently of the other."). Therefore, because the Liberty Meter contains solar panels that recharge a main battery, it meets this element of the claim.

c. A set of connectors for a back-up battery. Specifically, the Liberty Meter contains a back-up battery with connectors to the rest of the meter. For example, the Liberty Meter contains a solar rechargeable

battery system and an independent back up battery system. *See* Ex. 8 255, 297. *See also* Ex. 7 at 162, 166 (describing two solar panels and a rechargeable battery pack that provides power directly to the Liberty Meter). Because the Liberty Meter's battery sources provides power directly to the meter, the Liberty Meter meets this element of the claim.

d. A wireless communication device for communicating a status message regarding the state of the main battery and the state of the back-up battery to a control system external to the parking meter. For example, the Liberty Meter utilizes a solar charging system that is "internally diagnosed" with data that is "stored and reported on the web-portal back end application Parking Enterprise [Manager] (PEM)." Ex. 8 at 255. The PEM is further "wirelessly networked with the Liberty [Meter] to provide real-time operation and revenue data." Ex. 7 at 162. Such data includes "current battery voltage (main and rechargeable), minimum battery voltage (main and rechargeable) since last call in…" *Id.* at 172. Therefore, the Liberty Meter contains a wireless communication device for communicating a status message regarding the state of the main battery and the state of the back-up battery to a control system external to the parking meter.

e. A set of load terminals for connection to a load. Specifically, the Liberty Meter contains a solar rechargeable battery system that has an independent backup battery system. *See* Ex. 8 at 255, 296 ("Solar powered with rechargeable battery for extended battery life."), and 297("solar powered with rechargeable and backup batteries for extended life"); *see also* Ex. 7 at 162 ("The Liberty utilizes two solar panels and a rechargeable/back-up battery pack."); at 166 ("Two

solar panel, one on each side of the mechanism, provide power to the Liberty . . . Rechargeable batteries and a backup battery fully operate the mechanism independently of the other.") The Liberty Meter therefore necessarily contains load terminals to connect the power supply to a load.

f.   A control unit for controlling supply of power to the load primarily from the main battery and secondarily from the back-up battery. For example, this control system can switch the source of the power to the load between the main battery and the backup battery. Ex. 8 at 255 ("The solar rechargeable battery system shall have an independent backup battery system. Both systems shall be capable of fully operating the mechanism independent of each other, if necessary."), 296 ("Solar powered with rechargeable battery for extended battery life."), 297 ("solar powered with rechargeable and backup batteries for extended life"); *see also* Ex. 7 at 162 ("The Liberty utilizes two solar panels and a rechargeable/back-up battery pack."); at 166 ("Two solar panel, one on each side of the mechanism, provide power to the Liberty . . . Rechargeable batteries and a backup battery fully operate the mechanism independently of the other."). Therefore, the Liberty Meter contains a control unit that can control the supply of power to the load primarily from the main battery and secondarily from the back-up battery.

g.   A housing that encloses the main battery, the back-up battery, the control unit, and the wireless communication device wherein the housing includes the load terminals and is received within the parking meter. The Liberty Meter contains a casing that encloses all of the components of the liberty meter, including the main battery (Ex. 8 at

296, 297, showing the housing of the Liberty Meter, which contains features including a "[s]olar powered with rechargeable battery for extended battery life"), the back-up battery (*id.),* the control unit (*id.)* "intelligent software to minimize power consumption… Retains full audit data during battery removal and exchange"), and the wireless communication device (*id.)* "secure real-time communication via GPRS network to AutoTRAX and AutoISSUE management systems… "Over-the-Air" meter updates for configuration and rate programming")). On information and belief, this housing for the Liberty also includes the load terminals and can be received within the parking meter.

**Defendants' Answer:** Denied.

46. With respect to the '403 Patent, the Liberty Meter infringes at least Claim 1. The Liberty Meter meets each element of claim 1. The Liberty Meter is a parking meter device. *See, e.g.,* Ex. 8 at 191. For example, the Liberty Meter includes:

a. An internal clock. Specifically, the Liberty Meter contains "real-time clock automatically synchronizes with centralized server." Ex. 8 at 242.

b. A display. Specifically, the Liberty Meter "displays a default amount of time, predetermined by the City." *See id.* at 246.

c. A communication subsystem configured to provide two-way wireless communication. Specifically, the Liberty Meter includes communication capabilities, which enables the Liberty Meter to "communicate with the operating system without the need to install costly and disruptive ancillary infrastructure. Everything the Liberty needs to process credit cards and report to the PEM (Parking

28

Enterprise Manager software system) is included in the mechanism without additional equipment being mounted on the existing meters or poles." *See id.*

d. A controller module coupled to the internal clock, the display, and the communication subsystem that, on information and belief, is configured to control the communication subsystem to receive data indicative of a remote payment being completed, control the display to display an amount of time purchased by the remote payment for a parking session, monitor the clock to determine an amount of time remaining in the parking session, control the display to display the amount of time remaining, power down at least a portion of the communication subsystem subsequent to receiving the data indicative of the remote payment being completed, wake up the powered down portion of the communication subsystem upon determining that the amount of time remaining is below a threshold time prior to expiration of the parking session, receive an indication of additional time being paid for remotely, and control the display to update the displayed time remaining to reflect the additional time. The Liberty Meter's controller module is coupled to an internal clock, the display, and a communication subsystem, and is configured to control the communication subsystem to receive data indicative of a remote payment being completed. For example, the Liberty Meter "offers pay-by-cell technology services through a variety of the parking industry's leading service providers, including integration with enforcement and meter products through companies such as ParkMobile, Verrus (Paybyphone), and QuickPay, and others." *See id.* at 246. Further, the Liberty Meter can be integrated wirelessly

29

with pay-by- cell providers to offer a "push to meter service". *Id.* In this configuration, upon completion of a successful transaction, the payment is sent to the parking meter in real-time. *Id.* When the transaction is complete, the meter displays the amount of time purchased for a parking session. *Id.* ("provides positive confirmation to the motorist at the meter"). On information and belief, the Liberty Meter's controller module powers down at least a portion of a communication subsystem subsequent to receiving the data indicative of the remote payment being completed. On information and belief, the Liberty Meter's controller module wakes up the powered down portion of the communication subsystem upon determining that the amount of time remaining is below a threshold time prior to expiration of the parking session, receives an indication of additional time being paid for remotely, and controls the display to update the displayed time remaining to reflect the additional time.

e. The controller is further configured to, on information and belief, upon waking up the powered down portion of the communication subsystem, control the communication subsystem to transmit a message to a remote management system or to a wireless device of the registered user indicating the time remaining is approaching expiration time. For example, the ParkMobile system that is compatible with the Liberty Meter is configured to send notifications to a registered user's mobile device indicating the time remaining is approach expiration time. Likewise, the Liberty Meter is configured to operate with the PEMS management software to provide real-time enforcement information even through a pay-by-cell option. *See id.* at 261 ("Management System … Systems for each of the individual

30

components must integrate with each other so that information from
the . . . cellular wireless communicating Meters . . . shall share
information for real-time enforcement and parking management with
the Pay by Cell…") and 273. ("System shall provide for real-time
alarm and status reporting for system monitoring and maintenance…
System shall provide for real-time and historical management
information reporting").

**Defendants' Answer:** Denied.

47.    With respect to the '474 Patent, the Liberty Meter infringes at least
Claim 18. The Liberty Meter meets each element of claim 18. For example, the
Liberty Meter contains a power supply for supplying power to the Liberty Meter.
This power supply unit includes:

a. A rechargeable main battery. Specifically, the Liberty Meter is
required to "clearly display a low battery condition when this
situation occurs and/or failing/low rechargeable batteries in the case
of the solar batteries used in the cellular wireless credit card enabled
meter system…" Ex. 8 at 251. Moreover, the Liberty Meter contains
a "solar rechargeable battery system," which has "an independent
backup battery system." *Id.* at 255. *See also id.* at 296 ("Solar
powered with rechargeable battery for extended battery life."); at 297
("solar powered with rechargeable and backup batteries for extended
life"); Ex. 7 at 162 ("The Liberty utilizes two solar panels and a
rechargeable/back-up battery pack."); at 166 ("Two solar panel, one
on each side of the mechanism, provide power to the Liberty . . .
Rechargeable batteries and a backup battery fully operate the
mechanism independently of the other. Because Liberty Meter

includes a rechargeable, main battery, it meets this element of the claim.

b. A charging arrangement comprising one or more terminals for connecting the main battery to one or more charging sources. Specifically, the Liberty Meter contains solar panels which recharge the main battery. For example, the Liberty Meters contain "protected, recharging solar panel(s), to allow solar charging regardless of meter location relative to the sun." Ex. 8 at 255. *See also id.* at 296 ("Solar powered with rechargeable battery for extended battery life."); *id.* at 297 ("solar powered with rechargeable and backup batteries for extended life"); Ex. 7 at 166 ("Two solar panels, one on each side of the mechanism, provide power to the Liberty . . . Rechargeable batteries and a backup battery fully operate the mechanism independently of the other."). Therefore, because the Liberty Meter contains solar panels that recharge a main battery, it meets this element of the claim.

c. A replaceable and non-rechargeable back-up battery. For example, the Liberty Meter is "[s]olar powered with rechargeable and backup batteries for extended life. *See* Ex. 8 at 297. *See also id.* at 283 ("Liberty D & AA Battery Pack (Includes required harness and connectors").

d. On information and belief, the Liberty Meter's power supply includes at least one capacitor.

e. A connection to a wireless communication device for communicating a status message regarding the state of the main battery and the state of the back-up battery to a control system external to the parking meter. The Liberty Meter is configured to send information regarding

32

the power system to an external control system called PEMs or AutoTRAX. Specifically, the Liberty Meter contains a solar charging system that is internally diagnosed, with the data stored and reported on the web-portal back end application Parking Enterprise Manager (PEM). *See* Ex. 8 at 255. The PEM in turn is wirelessly networked with the Liberty Meter to provide real-time operation and revenue data. *See* Ex. 7 at 162. A report ("Current Meter Status/Health") is generated, which includes items such as current battery voltage (main and rechargeable), minimum battery voltage (main and rechargeable) since last call in..."). *Id.* at 172. Therefore, the Liberty Meter includes a connection to a wireless communication device for communicating a status message regarding the state of the main battery and the state of the back-up battery to a control system external to the parking meter.

f.  A connection to a control unit for controlling supply of power to the parking meter primarily from the main battery and secondarily from the back-up battery. Specifically, the Liberty Meter contains a solar rechargeable battery system that has an independent back up battery system. *See* Ex. 8 at 255. "Both systems shall be capable of fully operating the mechanism independent of each other, if necessary." *Id. See also, id.* at 297 ("Solar powered with rechargeable and backup batteries for extended life"); *see also* Ex. 7 at 166 ("Rechargeable batteries and a backup battery fully operate the mechanism independently of the other."). On information and belief, during peak power demand a capacitor assists in the supply of power.

g.  The main battery, the back-up battery, the at least one capacitor, the wireless communication device, and the control unit are received

within the parking meter. The Liberty Meter encloses all of the components of the liberty meter, including the main battery (Ex. 8 at 296, 297, showing the housing of the Liberty Meter, which contains features including a "[s]olar powered with rechargeable battery for extended battery life"), the back-up battery (*id.),* the control unit (*id.*) "intelligent software to minimize power consumption… Retains full audit data during battery removal and exchange"), and the wireless communication device (*id.*) "secure real-time communication via GPRS network to AutoTRAX and AutoISSUE management systems… "Over-the-Air" meter updates for configuration and rate programming"). *See also* the image of the Liberty Meter at Ex. 7 at 188.

**Defendants' Answer:** Denied.

48.    With respect to the '691 Patent, the Liberty Meter infringes at least Claim 1 of the '691 Patent. . The Liberty Meter meets each element of claim 1. For example, the Liberty Meter is a meter device. (*See, e.g.,* Exhibit 8 at 246.) It includes:

    a. An internal clock. Specifically, the Liberty a "real-time clock [that] automatically synchronizes with centralized server."). *See* Ex. 8 at 297.

    b. A display. *See id.* 246 ("Once read, the meter displays a default amount of time, predetermined by the City.").

    c. A communication subsystem configured to provide two-way wireless communication. Specifically, the Liberty Meter includes a wireless communication that enables the Liberty Meter to communicate with the operating system without ancillary infrastructure. *See id.* Further, "everything the Liberty needs to process credit cards and report to the PEM (Parking Enterprise Manager software system) is included in

the mechanism without additional equipment being mounted on the existing meters or poles." *Id.*

d. The claimed controller module. The Liberty Meter's controller module is configured to control the communication subsystem to receive data indicative of a remote payment being completed. Specifically, "Duncan Liberty offers pay-by-cell technology services through a variety of the parking industry's leading service providers, including integration with enforcement and meter products through companies such as ParkMobile, Verrus (Paybyphone), and QuickPay, and others."). *See id.* at 246. *See also id.* at 261 ("Management System … Systems for each of the individual components must integrate with each other so that information from the . . . cellular wireless communicating Meters . . . shall share information for real-time enforcement and parking management with the Pay by Cell…"). Furthermore, "Duncan can integrate wireless single-space and multi-space meters with some of these pay-by-cell providers to offer a "push to meter service". *Id.* at 246. In this configuration, upon completion of a successful transaction, the payment is sent to the parking meter in real-time. This then adds time to the meter which not only greatly simplifies the enforcement process, but also provides positive confirmation to the motorist at the meter." *Id.* Additionally, the claimed controller module is configured to control the display to update the displayed time remaining to reflect the additional time in a second amount of new time remaining. Specifically, when payment goes through the meter displays an amount of time purchased by the remote payment for a parking session. *Id.* ("provides positive confirmation to the motorist at the meter.").

1    e. The Liberty Meter also provides for real-time alarm and real-time and

2      historical status reporting for system monitoring and maintenance. *Id.*

3      at 273. *See also* ¶ 46, *supra.)*

4 **Defendants' Answer:** Denied.

5    49. In this Complaint, IPS Group alleges that defendant CivicSmart

6 infringes each of the Patents-in-Suit. Likewise, IPS Group alleges that defendants

7 DSI and DPT each infringe the '832, '403, '474, and '691 patents.

8 **Defendants' Answer:** Defendants admit that IPS Group purports to allege that

9 CivicSmart infringes each of the Patents-in-Suit, and that IPS Group alleges that

10 Defendants DSI and DPT infringe the '832, '403, '474, and '691 patents.  Defendants

11 deny these allegations.

12        **AS TO THE FIRST CAUSE OF ACTION**

13    **(Alleged Patent Infringement by CivicSmart of U.S. Patent No. 8,595,054)**

14    50. IPS Group repeats and realleges the allegations of the foregoing

15 paragraphs of this Complaint as though fully set forth herein.

16 **Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to

17 the foregoing paragraphs.

18    51. CivicSmart is liable for directly infringing at least Claim 1 of the '054

19 Patent pursuant to 35 U.S.C. § 271(a). CivicSmart makes, uses, sells, offers to sell,

20 and/or imports infringing Liberty Meters into the United States, without permission

21 from IPS Group.

22 **Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

23    52. Claim 1 is recited here as a representative claim for exemplary purposes

24 only. IPS Group intends to allege additional claims of the '054 Patent and will do so

25 in accordance with the Court's rules and procedures.

26 **Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

27

28

53.     As alleged *supra,* CivicSmart is aware of IPS Group's allegations that the Liberty Meter infringes the claims of the '054 Patent. Accordingly, CivicSmart knows that it and its customers, resellers, and end-users use the Liberty Meter in an infringing manner particularly. CivicSmart encourages its customers, resellers, and end-users to use the Liberty Meters in an infringing manner as set forth in the preceding Paragraphs.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

54.     In particular, when a Liberty Meter is placed into operation and installed at a specific parking space, use of that Liberty Meter is the only way by which an end-user may utilize the specific parking space. Each such use of the Liberty Meter— *i.e.* each act of paying the parking meter either by coin, credit card, or alternative method—constitutes a separate act of direct infringement of the claims of the '054 Patent.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

55.     Additional examples of CivicSmart's actions taken to induce its customers, resellers, and end-users include: offering ongoing training regarding the Liberty Meters; selling or offering to sell spare parts regarding the Liberty Meters; providing installation, training, and ongoing support manuals regarding the use and installation of the Liberty Meters (which includes using the Liberty Meters in an infringing manner); and offering various "tag along" products that use or are used in connection with the Liberty Meters.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

56.     On information and belief, CivicSmart, without authority, has induced and continues to induce infringement of the '054 Patent in violation of 35 U.S.C. § 271(b) inasmuch as:

        a.     The Liberty Meters infringe during the normal use of the Liberty Meters by CivicSmart customers, resellers, and/or end-users;

37

b.     CivicSmart has known and has been continuously aware of the '054 Patent since before the filing of this action, as discussed above;

c.     CivicSmart has acted in a manner that encourages and continues to encourage others to infringe the '054 Patent by, among other things, intentionally directing, instructing, or encouraging customers or end-users to use the Liberty Meters in a manner that CivicSmart knows or should have known would cause the customers or end-users to infringe the '054 Patent;

d.     CivicSmart sells, distributes, and supplies the Liberty Meters to customers and end-users with the intent that the products be used in an infringing manner;

e.     CivicSmart provides the services and products identified above designed to instruct, encourage, and direct customers and end-users to use the products in an infringing manner; and,

f.     CivicSmart advertises, markets, and promotes the use of the Liberty Meters in an infringing manner.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

57.     As alleged above, incorporated herewith, and based upon information and belief, Plaintiff alleges that CivicSmart has contributed and continues to contribute to the infringement of Claim 1 of the '054 patent in violation of 35 U.S.C. § 271(c) inasmuch as:

a.     The Liberty Meters infringe the '054 Patent during the normal use of the Liberty Meters by CivicSmart's customers, resellers, and end users within the United States;

b.     CivicSmart has known and has been continuously aware of the '054 Patent since before the filing of this action;

c.     CivicSmart imports into the United States, sells and/or offers to sell within the United States the Liberty Meters and components thereof (including

but not limited to various spare parts to be used in the Liberty Meters) that (a) practice the claimed parking meter device of the '054 Patent; and, (b) CivicSmart knows constitute material infringing component(s) of the Liberty Meters, which were made and/or especially adapted for use in the Liberty Meters;

        d.     The Liberty Meters and components thereof are not staple articles of commerce suitable for substantial non-infringing use with respect to the '054 Patent at least because the Liberty Meters and components thereof have no use apart from making and/or using the inventions as claimed in the '054 Patent (the parking meters and components thereof are used only in conjunction with or as part of the claimed apparatus of the '054 Patent); and,

        e.     CivicSmart sells, has sold, and/or has supplied the Liberty Meters knowing of IPS Group's '054 Patent and knowing that the Liberty Meters incorporate Plaintiff's patented device and/or were specially adapted for use in a way that infringes the '054 Patent.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

        58.    CivicSmart has contributorily infringed the '054 Patent by providing the Liberty Meters, including at least the Liberty Meters, to their customers, resellers, and end-users who in turn make, use, sell, offer to sell, or import the parking meter claimed in the '054 Patent as alleged above and that incorporates the Liberty Meter as a component. Further, components of the Liberty Meters themselves, including but not limited to spare parts, are known by CivicSmart to be especially made or specially adapted for use in infringement of the claims of the '054 Patent, as alleged above. These components constitute a material part of the inventions covered by the '054 Patent because they can only be used in connection with the Liberty Meters, and the Liberty Meters themselves (as made and as used) infringe the '054 Patent. Additionally, these components, as well as the Liberty Meters themselves, are not staple articles or commodities suitable for substantial non-infringing use because they

1   are fundamental to and designed specifically to provide functionality for the parking
2   meter devices that infringe the '054 Patent.

3   **Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

4           59.    Unless enjoined by this Court, CivicSmart will continue to infringe the
5   '054 Patent, and IPS Group will continue to suffer irreparable harm for which there is
6   no adequate remedy at law. Accordingly, IPS Group is entitled to preliminary and/or
7   permanent relief against such infringement pursuant to 35 U.S.C. § 283.

8   **Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

9           60.    As a result of CivicSmart's infringement of the '054 Patent, IPS Group
10  has been and continues to be irreparably injured in its business and property rights,
11  and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an
12  amount to be determined at trial.

13  **Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

14          61.    IPS Group is informed and believes, and on the basis of such
15  information and belief, alleges that CivicSmart's infringement of the '054 Patent is
16  willful and deliberate. CivicSmart has had actual knowledge of the '054 Patent since
17  at least May 14, 2014, yet continues to infringe this patent to this very day. As a
18  result of CivicSmart's intentional actions, the infringement of the '054 Patent is
19  willful and deliberate, entitling IPS Group to enhanced damages pursuant to 35
20  U.S.C. § 284 and to an award of attorney's fees and costs incurred in prosecuting this
21  action pursuant to 35 U.S.C. § 285.

22  **Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

23              **AS TO THE SECOND CAUSE OF ACTION**

24  **(Alleged Patent Infringement by CivicSmart of U.S. Patent No. 7,854,310)**

25          62.    IPS Group repeats and realleges the allegations of the foregoing
26  paragraphs of this Complaint as though fully set forth herein.

27

28

**Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to the foregoing paragraphs.

63.    CivicSmart is liable for direct infringement of at least Claim 1 of the '310 Patent pursuant to 35 U.S.C. § 271(a). CivicSmart makes, uses, sells, offers to sell, and/or imports into the United States infringing Liberty Meters without permission from IPS Group.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

64.    Claim 1 is recited here as a representative claim for exemplary purposes only. IPS Group intends to allege additional claims of the '310 Patent and will do so in accordance with the Court's local rules and procedures.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

65.    As alleged *supra,* CivicSmart is aware of IPS Group's allegations that the Liberty Meter infringes the claims of the '054 Patent. Accordingly, CivicSmart is also aware that it and its customers, resellers, and end-users use the Liberty Meters in an infringing manner. CivicSmart encourages its customers, resellers, and end-users to use the Liberty Meters in an infringing manner as set forth in the preceding Paragraphs.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

66.    In particular, when a Liberty Meter is placed into operation and installed at a specific parking space, use of that Liberty Meter is the only way by which an end-user may utilize the specific parking space. Each such use of the Liberty Meter— *i.e.* each act of paying the parking meter either by coin, credit card, or alternative method—constitutes a separate act of direct infringement of the claims of the '310 Patent.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

67.    Additional examples of CivicSmart's actions taken to induce its customers, resellers, and end-users include: offering ongoing training regarding the

Liberty Meters; selling or offering to sell spare parts regarding the Liberty Meters; providing installation, training, and ongoing support manuals regarding the use and installation of the Liberty Meters (which includes using the Liberty Meters in an infringing manner); and offering various "tag along" products that use or are used in connection with the Liberty Meters.

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

68.     On information and belief, CivicSmart, without authority, has induced and continues to induce infringement of the '310 Patent in violation of 35 U.S.C. § 271(b) inasmuch as:

a.     The Liberty Meters infringe during the normal use of the Liberty Meters by CivicSmart's customers, resellers, and/or end-users;

b.     CivicSmart has known and has been continuously aware of the '310 Patent since before the filing of this action, as discussed above;

c.     CivicSmart has acted in a manner that encourages and continues to encourage others to infringe the '310 Patent by, among other things, intentionally directing, instructing, or encouraging customers or end-users to use the Liberty Meters in a manner that CivicSmart knows or should have known would cause the customers or end-users to infringe the '310 Patent;

d.     CivicSmart sells, distributes, and supplies the Liberty Meters to customers and end-users with the intent that the products be used in an infringing manner;

e.     CivicSmart provides the services and products identified above designed to instruct, encourage, and direct customers and end-users to use the products in an infringing manner; and,

f.     CivicSmart advertises, markets, and promotes the use of the Liberty Meters in an infringing manner.

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

42

69.     As alleged above, incorporated herewith, and based upon information and belief, Plaintiff alleges that CivicSmart has contributed and continues to contribute to the infringement of Claim 1 of the '310 Patent in violation of 35 U.S.C. § 271(c) inasmuch as:

a.     The Liberty Meters infringe the '310 Patent during the normal use of the Liberty Meters by CivicSmart's customers, resellers, and end users within the United States;

b.     CivicSmart has known and has been continuously aware of the '310 Patent since before the filing of this action, as discussed above;

c.     CivicSmart imports into the United States, sells and/or offers to sell within the United States the Liberty Meters and components thereof (including but not limited to various spare parts to be used in the Liberty Meters) that (a) practice the claimed parking meter device of the '310 Patent; and, (b) CivicSmart knows constitute material infringing component(s) of the Liberty Meters, which were made and/or especially adapted for use in the Liberty Meters;

d.     The Liberty Meters and components thereof are not staple articles of commerce suitable for substantial non-infringing use with respect to the '310 Patent at least because the Liberty Meters and components thereof have no use apart from making and/or using the inventions as claimed in the '310 Patent (the parking meters and components thereof are used only in conjunction with or as part of the claimed apparatus of the '310 Patent); and,

e.     CivicSmart sells, has sold, and/or has supplied the Liberty Meters knowing of IPS Group's '310 Patent and knowing that the Liberty Meters incorporate Plaintiff's patented device and/or were specially adapted for use in a way that infringes the '310 Patent.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

43

70.    CivicSmart has contributorily infringed the '310 Patent by providing the Liberty Meters, including at least the Liberty Meters to their customers, resellers, and end-users who in turn make, use, sell, offer to sell, or import the parking meter claimed in the '310 Patent as alleged above and that incorporates the Liberty Meter as a component. Further, components of the Liberty Meters themselves, including but not limited to spare parts, are known by CivicSmart to be especially made or specially adapted for use in infringement of the claims of the '310 Patent, as alleged above. These components constitute a material part of the inventions covered by the '310 Patent because they can only be used in connection with the Liberty Meters, and the Liberty Meters themselves (as made and as used) infringe the '310 Patent. Additionally, these components, as well as the Liberty Meters themselves, are not staple articles or commodities suitable for substantial non-infringing use because they are fundamental to and designed specifically to provide functionality for the parking meter devices that infringe the '310 Patent.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

71.    Unless enjoined by this Court, CivicSmart will continue to infringe the '310 Patent, and IPS Group will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, IPS Group is entitled to preliminary and/or permanent relief against such infringement pursuant to 35 U.S.C. § 283.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

72.    As a result of CivicSmart's infringement of the '310 Patent, IPS Group has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

73.    IPS Group is informed and believes, and on the basis of such information and belief, alleges that CivicSmart's infringement of the '310 Patent is

willful and deliberate. CivicSmart has had actual knowledge of the '310 Patent since before the filing of this Complaint, yet continues to infringe this patent to this very day. As a result of CivicSmart's intentional actions, the infringement of the '310 Patent is willful and deliberate, entitling IPS Group to enhanced damages pursuant to 35 U.S.C. § 284 and to an award of attorney's fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

## AS TO THE THIRD CAUSE OF ACTION

### (Alleged Patent Infringement by all Defendants of U.S. Patent No. 8,513,832)

74.    IPS Group repeats and realleges the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

**Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to the foregoing paragraphs.

75.    Each Defendant, either individually or collectively, directly infringes at least Claim 1 of the '832 Patent pursuant to 35 U.S.C. § 271(a). Each Defendant, either individually or collectively, makes, uses, sells, offers to sell, and/or imports Liberty Meters into the United States without permission from IPS Group.

**Defendants' Answer:** Denied.

76.    Claim 1 is recited here as a representative claim for exemplary purposes only. IPS Group intends to allege additional claims of the '832 Patent and will do so in accordance with the Court's local rules and procedures.

**Defendants' Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 76, and therefore deny them.

77.    On information and belief, each Defendant is aware of its respective infringing acts. Each Defendant is also aware that by extension its respective customers, resellers, and end-users make and/or use the Liberty Meters in an infringing manner. Each Defendant encourages its respective customers, resellers,

and end-users to make and/or use the Liberty Meters in an infringing manner as set forth in the preceding Paragraphs.

**Defendants' Answer:** Denied.

78.   In particular, when a Liberty Meter is placed into operation and installed at a specific parking space, use of that Liberty Meter is the only way by which an end-user may utilize the specific parking space. Each such use of the Liberty Meter— *i.e.* each act of paying the parking meter either by coin, credit card, or alternative method—constitutes a separate act of direct infringement of the claims of the '832 Patent.

**Defendants' Answer:** Denied.

79.   Additional examples of Each Defendant's actions taken to induce its respective customers, resellers, and end-users include: offering ongoing training regarding the Liberty Meters; selling or offering to sell spare parts for the Liberty Meters; providing installation, training, and ongoing support regarding the use and installation of the Liberty Meters (which includes using the Liberty Meters in an infringing manner); and offering various "tag along" products and services that use or are used in connection with the Liberty Meters.

**Defendants' Answer:** Denied.

80.   On information and belief, each Defendant—individually or collectively—without authority has induced and continues to induce infringement of the '832 Patent in violation of 35 U.S.C. § 271(b) inasmuch as:

a.   The Liberty Meter's normal use by Defendants' respective customers, resellers, and/or end-users infringe one or more claims of the '832 Patent;

b.   Each Defendant has known and has been continuously aware of the '832 Patent since before the filing of this action, as discussed above;

c.   Each Defendant has acted in a manner that encourages and continues to encourage others to infringe the '832 Patent by, among other things,

46

1  intentionally directing, instructing, or encouraging customers or end-users to use the

2  Liberty Meters in a manner that each Defendant knows or should have known would

3  cause its respective customers or end-users to infringe the '832 Patent;

4      d.      Each Defendant, individually or collectively, sells, distributes, and

5  supplies the Liberty Meters to customers and end-users with the intent that the

6  products be used in an infringing manner;

7      e.      Each Defendant provides the services and products identified

8  above designed to instruct, encourage, and direct customers and end-users to use the

9  products in an infringing manner; and,

10     f.      Each Defendant advertises, markets, and promotes the use of the

11  Liberty Meters in an infringing manner.

12  **Defendants' Answer:** Denied.

13      81.     As alleged above, incorporated herewith, and based upon information

14  and belief, Plaintiff alleges that each Defendant, individually or collectively, has

15  contributed and continues to contribute to the infringement of at least Claim 1 of the

16  '832 Patent in violation of 35 U.S.C. § 271(c) inasmuch as:

17      a.      Liberty Meters infringe the '832 Patent during their normal use by

18  Each Defendant's respective customers, resellers, and end users within the United

19  States;

20      b.      Each Defendant has known and has been continuously aware of

21  the '832 Patent since before the filing of this action, as discussed above;

22      c.      Each Defendant makes, uses, imports into the United States, sells

23  and/or offers to sell within the United States the Liberty Meters and components

24  thereof (including but not limited to various spare parts to be used in the Liberty

25  Meters and/or services related to the Liberty Meters) that (a) practice the claims of

26  the '832 Patent; and, (b) each Defendant knows constitutes material infringing

27

28

component(s) of the Liberty Meters, which were made and/or especially adapted for use in the Liberty Meters;

d.      The Liberty Meters and components thereof are not staple articles of commerce suitable for substantial non-infringing use with respect to the '832 Patent at least because the Liberty Meters and components thereof may be used only in conjunction with or as part of the claimed apparatus of the '832 Patent have no use apart from making and/or using the inventions as claimed in the '832 Patent (the parking meters and components thereof are used only in conjunction with or as part of the claimed apparatus of the '832 Patent); and,

e.      Each Defendant, individually or collectively, sells, has sold, and/or has supplied the Liberty Meters (or components thereof) knowing of IPS Group's '832 Patent and knowing that the Liberty Meters incorporate Plaintiff's patented device and/or were specially adapted for use in a way that infringes the '832 Patent.

**Defendants' Answer:** Denied.

82.      Each Defendant, individually or collectively, has contributorily infringed the '832 Patent by providing Liberty Meters or components thereof to its respective customers, resellers, and end-users who in turn make, use, sell, offer to sell, or import the parking meter claimed in the '832 Patent as alleged above and that incorporates such meters or components. Further, components of the Liberty Meters themselves, including but not limited to spare parts, are known by CivicSmart to be especially made or specially adapted for use in infringement of the claims of the '832 Patent, as alleged above. These components constitute a material part of the inventions covered by the '832 Patent because they can only be used in connection with the Liberty Meters, and the Liberty Meters themselves (as made and as used) infringe the '832 Patent. Additionally, these components, as well as the Liberty Meters themselves, are not staple articles or commodities suitable for substantial, non-infringing use because

1  they are fundamental to and designed specifically to provide functionality for the
2  parking meter devices that infringe the '832 Patent.

3  **Defendants' Answer:** Denied.

4  83.    Unless enjoined by this Court, each Defendant will continue to infringe
5  the '832 Patent, and IPS Group will continue to suffer irreparable harm for which
6  there is no adequate remedy at law. Accordingly, IPS Group is entitled to preliminary
7  and/or permanent relief against such infringement pursuant to 35 U.S.C. § 283.

8  **Defendants' Answer:** Denied.

9  84.    As a result of each Defendant's individual or collective infringement of
10  the '832 Patent, IPS Group has been and continues to be irreparably injured in its
11  business and property rights, and is entitled to recover damages from each Defendant
12  jointly and severally for such injuries pursuant to 35 U.S.C. § 284 in an amount to be
13  determined at trial.

14  **Defendants' Answer:** Denied.

15  85.    IPS Group is informed and believes, and on the basis of such
16  information and belief, alleges that each Defendant's infringement of the '832 Patent
17  is willful and deliberate. Each Defendant has had actual knowledge of the '832 Patent
18  since before the filing of this Complaint, yet continues to infringe this patent to this
19  very day. As a result of each Defendant's intentional actions, the infringement of the
20  '832 Patent is willful and deliberate, entitling IPS Group to enhanced damages
21  pursuant to 35 U.S.C. § 284 and to an award of attorney's fees and costs incurred in
22  prosecuting this action pursuant to 35 U.S.C. § 285.

23  **Defendants' Answer:** Denied.

24  ## AS TO FOURTH CAUSE OF ACTION

25  ## (Alleged Patent Infringement by all Defendants of U.S. Patent No. 8,749,403)

26  86.    IPS Group repeats and realleges the allegations of the foregoing
27  paragraphs of this Complaint as though fully set forth herein.

28

1  **Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to
2  the foregoing paragraphs.

3      87.    Each Defendant, either individually or collectively, directly infringes at
4  least Claim 1 of the '403 Patent pursuant to 35 U.S.C. § 271(a). Each Defendant,
5  either individually or collectively, makes, uses, sells, offers to sell, and/or imports
6  Liberty Meters into the United States without permission from IPS Group.

7  **Defendants' Answer:** Denied.

8      88.    Claim 1 is recited here as a representative claim for exemplary purposes
9  only. IPS Group intends to allege additional claims of the '403 Patent and will do so
10 in accordance with the Court's local rules and procedures.

11 **Defendants' Answer:** Defendants lack knowledge or information sufficient to form a
12 belief as to the truth of the allegations of Paragraph 88, and therefore deny them.

13     89.    On information and belief, each Defendant is aware of its respective
14 infringing acts. Each Defendant is also aware that by extension its respective
15 customers, resellers, and end-users make and/or use the Liberty Meters in an
16 infringing manner. Each Defendant encourages its respective customers, resellers,
17 and end-users to make and/or use the Liberty Meters in an infringing manner as set
18 forth in the preceding Paragraphs.

19 **Defendants' Answer:** Denied.

20     90.    In particular, when a Liberty Meter is placed into operation and installed
21 at a specific parking space, use of that Liberty Meter is the only way by which an end
22 user may utilize the specific parking space. Each such use of the Liberty Meter—*i.e.*
23 each act of paying the parking meter either by coin, credit card, or alternative
24 method—constitutes a separate act of direct infringement of the claims of the '403
25 Patent.

26 **Defendants' Answer:** Denied.

27
28

91.    Additional examples of each Defendant's actions taken to induce its respective customers, resellers, and end-users include: offering ongoing training regarding the Liberty Meters; selling or offering to sell spare parts regarding the Liberty Meters; providing installation, training, and ongoing support regarding the use and installation of the Liberty Meters (which includes using the Liberty Meters in an infringing manner); and offering various "tag along" products and services that use or are used in connection with the Liberty Meters.

**Defendants' Answer:** Denied.

92.    On information and belief, each Defendant—individually or collectively—without authority has induced and continues to induce infringement of the '403 Patent in violation of 35 U.S.C. § 271(b) inasmuch as:

a.    The Liberty Meter's normal use by Defendants' respective customers, resellers, and/or end-users infringe one or more claims of the '403Patent;

b.    Each Defendant has known and has been continuously aware of the '403 Patent since before the filing of this action, as discussed above;

c.    Each Defendant has acted in a manner that encourages and continues to encourage others to infringe the '403 Patent by, among other things, intentionally directing, instructing, or encouraging customers or end-users to use the Liberty Meters in a manner that each Defendant knows or should have known would cause its respective customers or end-users to infringe the '403 Patent;

d.    Each Defendant, individually or collectively, sells, distributes, and supplies the Liberty Meters to customers and end-users with the intent that the products be used in an infringing manner;

e.    Each Defendant provides the services and products identified above designed to instruct, encourage, and direct customers and end-users to use the products in an infringing manner; and,

f.      Each Defendant advertises, markets, and promotes the use of the Liberty Meters in an infringing manner.

**Defendants' Answer:** Denied.

93.     As alleged above, incorporated herewith, and based upon information and belief, Plaintiff alleges that each Defendant, individually or collectively, has contributed and continues to contribute to the infringement of at least Claim 1 of the '403 Patent in violation of 35 U.S.C. § 271(c) inasmuch as:

a.      Liberty Meters infringe the '403 Patent during their normal use by Each Defendant's respective customers, resellers, and end users within the United States;

b.      Each Defendant has known and has been continuously aware of the '403 Patent since before the filing of this action, as discussed above;

c.      Each Defendant makes, uses, imports into the United States, sells and/or offers to sell within the United States the Liberty Meters and components thereof (including but not limited to various spare parts to be used in the Liberty Meters and/or services related to the Liberty Meters) that (a) practice the claims of the '403 Patent; and, (b) each Defendant knows constitutes material infringing component(s) of the Liberty Meters, which were made and/or especially adapted for use in the Liberty Meters;

d.      The Liberty Meters and components thereof are not staple articles of commerce suitable for substantial non-infringing use with respect to the '403 Patent at least because the Liberty Meters and components thereof have no use apart from making and/or using the inventions as claimed in the '403 Patent (the parking meters and components thereof are used only in conjunction with or as part of the claimed apparatus of the '403 Patent); and,

e.      Each Defendant, individually or collectively, sells, has sold, and/or has supplied the Liberty Meters (or components thereof) knowing of IPS

52

Group's '403 Patent and knowing that the Liberty Meters incorporate Plaintiff's patented device and/or were specially adapted for use in a way that infringes the '403 Patent.

**Defendants' Answer:** Denied.

94. Each Defendant, individually or collectively, has contributorily infringed the '403 Patent by providing Liberty Meters or components thereof to its respective customers, resellers, and end-users who in turn make, use, sell, offer to sell, or import the parking meter claimed in the '403 Patent as alleged above and that incorporates such meters or components. Further, components of the Liberty Meters themselves, including but not limited to spare parts, are known by each Defendant to be especially made or specially adapted for use in infringement of the claims of the '403 Patent, as alleged above. These components constitute a material part of the inventions covered by the '403 Patent because they can only be used in connection with the Liberty Meters, and the Liberty Meters themselves (as made and as used) infringe the '403 Patent. Additionally, these components, as well as the Liberty Meters themselves, are not staple articles or commodities suitable for substantial non-infringing use because they are fundamental to and designed specifically to provide functionality for the parking meter devices that infringe the '403 Patent.

**Defendants' Answer:** Denied.

95. Unless enjoined by this Court, each Defendant will continue to infringe the '403 Patent, and IPS Group will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, IPS Group is entitled to preliminary and/or permanent relief against such infringement pursuant to 35 U.S.C. § 283.

**Defendants' Answer:** Denied.

96. As a result of each Defendant's individual or collective infringement of the '403 Patent, IPS Group has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages from each Defendant

1  jointly and severally for such injuries pursuant to 35 U.S.C. § 284 in an amount to be

2  determined at trial.

3  **Defendants' Answer:** Denied.

4      97.   IPS Group is informed and believes and, on the basis of such

5  information and belief, alleges that each Defendant's infringement of the '403 Patent

6  is willful and deliberate. Each Defendant has had actual knowledge of the '403 Patent

7  since before the filing of this Complaint, yet continues to infringe this patent to this

8  very day. As a result of each Defendant's intentional actions, the infringement of the

9  '403 Patent is willful and deliberate, entitling IPS Group to enhanced damages

10  pursuant to 35 U.S.C. § 284 and to an award of attorney's fees and costs incurred in

11  prosecuting this action pursuant to 35 U.S.C. § 285.

12  **Defendants' Answer:** Denied.

13  **AS TO THE FIFTH CAUSE OF ACTION**

14  **(Alleged Patent Infringement by all Defendanst of U.S. Patent No. 9,391,474)**

15      98.   IPS Group repeats and realleges the allegations of the foregoing

16  paragraphs of this Complaint as though fully set forth herein.

17  **Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to

18  the foregoing paragraphs.

19      99.   Each Defendant, either individually or collectively, directly infringes at

20  least Claim 18 of the '474 Patent pursuant to 35 U.S.C. § 271(a). Each Defendant,

21  either individually or collectively, makes, uses, sells, offers to sell, and/or imports

22  Liberty Meters into the United States without permission from IPS Group.

23  **Defendants' Answer:** Denied.

24      100.  Claim 18 is recited here as a representative claim for exemplary

25  purposes only. IPS Group intends to allege additional claims of the '474 Patent and

26  will do so in accordance with the Court's local rules and procedures.

27

28

**Defendants' Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 100, and therefore deny them.

101.   On information and belief, each Defendant is aware of its respective infringing acts. Each Defendant is also aware that by extension its respective customers, resellers, and end-users make and/or use the Liberty Meters in an infringing manner. Each Defendant encourages its respective customers, resellers, and end-users to make and/or use the Liberty Meters in an infringing manner as set forth in the preceding Paragraphs.

**Defendants' Answer:** Denied.

102.   In particular, when a Liberty Meter is placed into operation and installed at a specific parking space, use of that Liberty Meter is the only way by which an end-user may utilize the specific parking space. Each such use of the Liberty Meter— *i.e.* each act of paying the parking meter either by coin, credit card, or alternative method—constitutes a separate act of direct infringement of the claims of the '474 Patent.

**Defendants' Answer:** Denied.

103.   Additional examples of each Defendant's actions taken to induce its respective customers, resellers, and end-users include: offering ongoing training regarding the Liberty Meters; selling or offering to sell spare parts regarding the Liberty Meters; providing installation, training, and ongoing support regarding the use and installation of the Liberty Meters (which includes using the Liberty Meters in an infringing manner); and offering various "tag along" products and services that use or are used in connection with the Liberty Meters.

**Defendants' Answer:** Denied.

104. On information and belief, each Defendant—individually or collectively—without authority has induced and continues to induce infringement of the '474 Patent in violation of 35 U.S.C. § 271(b) inasmuch as:

a.      The Liberty Meter's normal use by Defendants' respective customers, resellers, and/or end-users infringe one or more claims of the '474 Patent;

b.      Each Defendant has known and has been continuously aware of the '474 Patent since before the filing of this action, as discussed above;

c.      Each Defendant has acted in a manner that encourages and continues to encourage others to infringe the '474 Patent by, among other things, intentionally directing, instructing, or encouraging customers or end-users to use the Liberty Meters in a manner that each Defendant knows or should have known would cause its respective customers or end-users to infringe the '474 Patent;

d.      Each Defendant, individually or collectively, sells, distributes, and supplies the Liberty Meters to customers and end-users with the intent that the products be used in an infringing manner;

e.      Each Defendant provides the services and products identified above designed to instruct, encourage, and direct customers and end-users to use the products in an infringing manner; and,

f.      Each Defendant advertises, markets, and promotes the use of the Liberty Meters in an infringing manner.

**<u>Defendants' Answer:</u>** Denied.

105.   As alleged above, incorporated herewith, and based upon information and belief, Plaintiff alleges that each Defendant, individually or collectively, has contributed and continues to contribute to the infringement of at least Claim 18 of the '474 Patent in violation of 35 U.S.C. § 271(c) inasmuch as:

a.      Liberty Meters infringe the '474 Patent during their normal use by Each Defendant's respective customers, resellers, and end users within the United States;

b.      Each Defendant has known and has been continuously aware of the '474 Patent since before the filing of this action, as discussed above;

c.     Each Defendant makes, uses, imports into the United States, sells and/or offers to sell within the United States the Liberty Meters and components thereof (including but not limited to various spare parts to be used in the Liberty Meters and/or services related to the Liberty Meters) that (a) practice the claims of the '474 Patent; and, (b) each Defendant knows constitutes material infringing component(s) of the Liberty Meters, which were made and/or especially adapted for use in the Liberty Meters;

d.     The Liberty Meters and components thereof are not staple articles of commerce suitable for substantial non-infringing use with respect to the '474 Patent at least because the Liberty Meters and components thereof have no use apart from making and/or using the inventions as claimed in the '474 Patent (the parking meters and components thereof are used only in conjunction with or as part of the claimed apparatus of the '474 Patent); and,

e.     Each Defendant, individually or collectively, sells, has sold, and/or has supplied the Liberty Meters (or components thereof) knowing of IPS Group's '474 Patent and knowing that the Liberty Meters incorporate Plaintiff's patented device and/or were specially adapted for use in a way that infringes the '474 Patent.

**Defendants' Answer:** Denied.

106.   Each Defendant, individually or collectively, has contributorily infringed the '474 Patent by providing Liberty Meters or components thereof to its respective customers, resellers, and end-users who in turn make, use, sell, offer to sell, or import the parking meter claimed in the '474 Patent as alleged above and that incorporates such meters or components. Further, components of the Liberty Meters themselves, including but not limited to spare parts, are known by each Defendant to be especially made or specially adapted for use in infringement of the claims of the '474 Patent, as alleged above. These components constitute a material part of the inventions covered

by the '474 Patent because they can only be used in connection with the Liberty Meters, and the Liberty Meters themselves (as made and as used) infringe the '474 Patent. Additionally, these components, as well as the Liberty Meters themselves, are not staple articles or commodities suitable for substantial non-infringing use because they are fundamental to and designed specifically to provide functionality for the parking meter devices that infringe the '474 Patent.

**Defendants' Answer:** Denied.

107. Unless enjoined by this Court, each Defendant will continue to infringe the '474 Patent, and IPS Group will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, IPS Group is entitled to preliminary and/or permanent relief against such infringement pursuant to 35 U.S.C. § 283.

**Defendants' Answer:** Denied.

108. As a result of each Defendant's individual or collective infringement of the '474 Patent, IPS Group has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages from each Defendant jointly and severally for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

**Defendants' Answer:** Denied.

109. IPS Group is informed and believes and, on the basis of such information and belief, alleges that each Defendant's infringement of the '474 Patent is willful and deliberate. Each Defendant has had actual knowledge of the '474 Patent since before the filing of this Complaint, yet continues to infringe this patent to this very day. As a result of each Defendant's intentional actions, the infringement of the '474 Patent is willful and deliberate, entitling IPS Group to enhanced damages pursuant to 35 U.S.C. § 284 and to an award of attorney's fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**Defendants' Answer:** Denied.

## AS TO THE SIXTH CAUSE OF ACTION

### (Alleged Patent Infringement by all Defendants of U.S. Patent No. 9,424,691)

110.   IPS Group repeats and realleges the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

**Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to the foregoing paragraphs.

111.   Each Defendant, either individually or collectively, directly infringes at least Claim 1 of the '691 Patent pursuant to 35 U.S.C. § 271(a). Each Defendant, either individually or collectively, makes, uses, sells, offers to sell, and/or imports Liberty Meters into the United States without permission from IPS Group.

**Defendants' Answer:** Denied.

112.   Claim 1 is recited here as a representative claim for exemplary purposes only. IPS Group intends to allege additional claims of the '691 Patent and will do so in accordance with the Court's local rules and procedures.

**Defendants' Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 112, and therefore deny them.

113.   On information and belief, each Defendant is aware of its respective infringing acts. Each Defendant is also aware that by extension its respective customers, resellers, and end-users make and/or use the Liberty Meters in an infringing manner. Each Defendant encourages its respective customers, resellers, and end-users to make and/or use the Liberty Meters in an infringing manner as set forth in the preceding Paragraphs.

**Defendants' Answer:** Denied.

114.   In particular, when a Liberty Meter is placed into operation and installed at a specific parking space, use of that Liberty Meter is the only way by which an end-user may utilize the specific parking space. Each such use of the Liberty Meter— *i.e.* each act of paying the parking meter either by coin, credit card, or alternative

method—constitutes a separate act of direct infringement of the claims of the '691 Patent.

**Defendants' Answer:** Denied.

115. Additional examples of each Defendant's actions taken to induce its respective customers, resellers, and end-users include: offering ongoing training regarding the Liberty Meters; selling or offering to sell spare parts regarding the Liberty Meters; providing installation, training, and ongoing support regarding the use and installation of the Liberty Meters (which includes using the Liberty Meters in an infringing manner); and offering various "tag along" products and services that use or are used in connection with the Liberty Meters.

**Defendants' Answer:** Denied.

116. On information and belief, each Defendant—individually or collectively—without authority has induced and continues to induce infringement of the '691 Patent in violation of 35 U.S.C. § 271(b) inasmuch as:

a. The Liberty Meter's normal use by Defendants' respective customers, resellers, and/or end-users infringe one or more claims of the '691 Patent;

b. Each Defendant has known and has been continuously aware of the '691 Patent since before the filing of this action, as discussed above;

c. Each Defendant has acted in a manner that encourages and continues to encourage others to infringe the '691 Patent by, among other things, intentionally directing, instructing, or encouraging customers or end-users to use the Liberty Meters in a manner that each Defendant knows or should have known would cause its respective customers or end-users to infringe the '691 Patent;

d. Each Defendant, individually or collectively, sells, distributes, and supplies the Liberty Meters to customers and end-users with the intent that the products be used in an infringing manner;

60

e.      Each Defendant provides the services and products identified above designed to instruct, encourage, and direct customers and end-users to use the products in an infringing manner; and,

f.      Each Defendant advertises, markets, and promotes the use of the Liberty Meters in an infringing manner.

**Defendants' Answer:** Denied.

117.   As alleged above, incorporated herewith, and based upon information and belief, Plaintiff alleges that each Defendant, individually or collectively, has contributed and continues to contribute to the infringement of at least Claim 18 of the '691 Patent in violation of 35 U.S.C. § 271(c) inasmuch as:

a.      Liberty Meters infringe the '691 Patent during their normal use by each Defendant's respective customers, resellers, and end users within the United States;

b.      Each Defendant has known and has been continuously aware of the '691 Patent since before the filing of this action, as discussed above;

c.      Each Defendant makes, uses, imports into the United States, sells and/or offers to sell within the United States the Liberty Meters and components thereof (including but not limited to various spare parts to be used in the Liberty Meters and/or services related to the Liberty Meters) that (a) practice the claims of the '691 Patent; and, (b) each Defendant knows constitutes material infringing component(s) of the Liberty Meters, which were made and/or especially adapted for use in the Liberty Meters;

d.      The Liberty Meters and components thereof are not staple articles of commerce suitable for substantial non-infringing use with respect to the '691 Patent at least because the Liberty Meters and components thereof have no use apart from making and/or using the inventions as claimed in the '691 Patent (the parking

1  meters and components thereof are used only in conjunction with or as part of the
2  claimed apparatus of the '691 Patent); and,

3          e.    Each Defendant, individually or collectively, sells, has sold,
4  and/or has supplied the Liberty Meters (or components thereof) knowing of IPS
5  Group's '691 Patent and knowing that the Liberty Meters incorporate Plaintiff's
6  patented device and/or were specially adapted for use in a way that infringes the '691
7  Patent.

8  **Defendants' Answer:** Denied.

9      118.   Each Defendant, individually or collectively, has contributorily infringed
10  the '691 Patent by providing Liberty Meters or components thereof to its respective
11  customers, resellers, and end-users who in turn make, use, sell, offer to sell, or import
12  the parking meter claimed in the '691 Patent as alleged above and that incorporates
13  such meters or components. Further, components of the Liberty Meters themselves,
14  including but not limited to spare parts, are known by each Defendant to be especially
15  made or specially adapted for use in infringement of the claims of the '691 Patent, as
16  alleged above. These components constitute a material part of the inventions covered
17  by the '691 Patent because they can only be used in connection with the Liberty
18  Meters, and the Liberty Meters themselves (as made and as used) infringe the '691
19  Patent. Additionally, these components, as well as the Liberty Meters themselves, are
20  not staple articles or commodities suitable for substantial non-infringing use because
21  they are fundamental to and designed specifically to provide functionality for the
22  parking meter devices that infringe the '691 Patent.

23  **Defendants' Answer:** Denied.

24      119.   Unless enjoined by this Court, each Defendant will continue to infringe
25  the '691 Patent and IPS Group will continue to suffer irreparable harm for which
26  there is no adequate remedy at law. Accordingly, IPS Group is entitled to preliminary
27  and/or permanent relief against such infringement pursuant to 35 U.S.C. § 283.

28

**Defendants' Answer:** Denied.

120.   As a result of each Defendant's individual or collective infringement of the '691 Patent, IPS Group has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages from each Defendant jointly and severally for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

**Defendants' Answer:** Denied.

121.   IPS Group is informed and believes and, on the basis of such information and belief, alleges that each Defendant's infringement of the '691 Patent is willful and deliberate. Each Defendant has had actual knowledge of the '691 Patent since before the filing of this Complaint, yet continues to infringe this patent to this very day. As a result of each Defendant's intentional actions, the infringement of the '691 Patent is willful and deliberate, entitling IPS Group to enhanced damages pursuant to 35 U.S.C. § 284 and to an award of attorney's fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**Defendants' Answer:** Denied.

### AS TO THE SEVENTH CAUSE OF ACTION

### (Alleged Violation by CivicSmart and Duncan Parking Technologies of False Advertising Law Bus. & Prof. Code. §§ 17500, et. seq.)

122.   IPS Group repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

**Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to the foregoing paragraphs.

123.   California's False Advertising Law (Bus. & Prof. Code §§ 17500, *et seq.*) makes it unlawful for any person to "induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state … in any newspaper or other publication,

or any advertising device… any statement… concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

124.   On information and belief, CivicSmart and DPT made and disseminated to members of the public in this state, including various city governments, untrue and misleading statements about IPS Group and IPS Group's patent portfolio, and statements IPS Group allegedly made in the course of litigation between the parties.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

125.   Through these untrue and misleading statements, CivicSmart and DPT induced and/or attempted to induce municipalities in this state to purchase its Liberty Meter instead of IPS Group's meters. Among other statements, CivicSmart and DPT falsely claim that IPS Group admitted that the Liberty Meter, without a solar panel, would not infringe any of IPS Group's patents.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

126.   The effect of these false statements equates to deception of a municipal government, potentially resulting in the supply of infringing products, which can be subject to removal by Court order upon a finding of infringement. This would thereby cause the city and its citizens substantial waste in taxpayer money, and create further costly remedial measures to replace the Liberty Meters.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

127.   Defendants knew or should have known, through the exercise of reasonable care that their statements were untrue and misleading.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

128.   Defendants' actions in violation of § 17500 were false and misleading such that the potential customers of IPS Group were and are likely to be deceived.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

129.   As a direct and proximate result of these acts, IPS Group has suffered injury in fact, lost monetary opportunities, and will continue to lose monetary opportunities as long as such false statement continue to be made and disseminated to potential customers.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

130.   IPS Group brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

## AS TO THE EIGHTH CAUSE OF ACTION

### (Alleged Violation by CivicSmart and Duncan Parking Technologies of Unfair Competition Law Bus. & Prof. Code. §§ 17200, et. seq.)

131.   IPS Group repeats and realleges the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

**Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to the foregoing paragraphs.

132.   California's Unfair Competition Law ("UCL") (Bus. & Prof. Code §§ 17200, *et. seq.)* prohibits acts of unfair competition, which include any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

133.   By their actions described above, CivicSmart and DPT violated and continue to violate the UCL in that they have engaged and continue to engage in unfair business practices within the meaning of the UCL.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

134.   CivicSmart and DPT have engaged in "unfair" business practice by publishing false information about IPS Group's intellectual property protections,

including the scope of patents owned by IPS Group, and false information about statements IPS Group made during litigation between the parties. On information and belief, potential customers relied and will rely on the false information in granting CivicSmart/DPT bids to purchase their products over other competitors, including IPS Group, and other business opportunities (such as opportunities to trial the infringing Liberty meter within the various municipalities).

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

135.   As a direct and proximate result of these acts, IPS Group has suffered injury in fact and has lost monetary opportunities.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

136.   IPS Group seeks an order and/or judgment from the Court to enjoin CivicSmart and DPT from engaging in practices which constitute unfair competition, and to order CivicSmart and DPT to issue corrective any city to which CivicSmart and DPT have made false statements and recanting those false statements regarding the current or future state of infringement as it relates to IPS Group patents.

**Defendants' Answer:** Denied as, *inter alia*, moot.  *See* ECF No. 80.

## AS TO THE NINTH CAUSE OF ACTION

### (Alleged Violation by CivicSmart and Duncan Parking Technologies of Federal Unfair Competition Law, 15. U.S.C. § 1125(a), Lanham Act § 43(a))

137.   IPS Group repeats and realleges the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

**Defendants' Answer:** Defendants repeat, as if fully set forth herein, its responses to the foregoing paragraphs.

138.   The conduct of CivicSmart and DPT is likely to cause confusion, to cause mistake, or to deceive customers as to the scope of IPS Group's intellectual property rights and scope of its patents. CivicSmart's and DPT's false statements relating to the alleged noninfringement of IPS Group's patents would also cause

66

customers, such as the City of Milwaukee, to accept CivicSmart's and DPT's proposals and bids based on the false representation of CivicSmart's and DPT's financial stability and deceptive assurances of their products' noninfringement of IPS Group's patents. CivicSmart's and DPT's false statements attempt to hide the high risk of significant financial liability resulting from legal actions instituted against CivicSmart and DPT, thereby exposing the city and the community to egregious and intentionally concealed risk of economic waste of taxpayer money and government resources.

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

139. The conduct of CivicSmart and DPT constitutes unfair competition, false advertising, false representation of fact, and false description in violation of § 43 (a) of the Langham Act, 15 U.S.C. § 1125(a).

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

140. Because CivicSmart and DPT are promoting false assurances about Liberty Meter's noninfringement of all IPS Group-owned patents solely by the omission of the solar panel feature, CivicSmart and DPT have caused and are causing substantial irreparable harm to IPS Group by mischaracterizing the scope of IPS Group's intellectual property rights and patent protection. CivicSmart and DPT will continue to damage IPS Group and to deceive customers, various municipal governments, and the public unless enjoined by this Court.

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

141. IPS Group has no adequate remedy at law to address the continued harm to its reputation caused by Defendants' conduct.

**Defendants' Answer:** Denied as, *inter alia*, moot. *See* ECF No. 80.

## **AS TO THE PRAYER FOR RELIEF**

Paragraphs a-o of the Prayer for Relief in the First Amended Complaint do not require a response.  Defendants deny that IPS Group is entitled to any relief, and deny any allegations contained in paragraphs a-o.

## **DEMAND FOR JURY TRIAL**

IPS Group's request for a jury trial does not require a response.  To the extent any allegations are included in this demand, Defendants deny each and every such allegations.  Defendants also demand a jury pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

## **GENERAL DENIAL**

Defendants deny each and every allegation contained in IPS Group, Inc.'s First Amended Complaint of May 26, 2017 that was not specifically admitted above.

## **AFFIRMATIVE DEFENSES**

Defendants hereby assert the following separate, distinct, and non-exclusive affirmative and other defenses to the claims and allegations contained in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Defendants' investigation of their defenses is continuing, and Defendants reserve the right to seek leave to amend their Answer to plead additional defenses and/or to supplement their existing defenses.  Defendants also reserve the right to seek leave to amend their Answer to assert additional counterclaims as its investigation into the allegations set forth in the First Amended Complaint continues.

## **FIRST AFFIRMATIVE DEFENSE**

### **(Failure to State a Claim Upon Which Relief May Be Granted)**

Plaintiff's claims fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

## (Non-Infringement by Defendants of U.S. Patent No. 8,595,054, Invalidity of U.S. Patent No. 8,595,054, Mootness, Preclusion)

Defendants are not infringing and have not infringed, directly, by inducement, contributorily, willfully, or in any way, and valid and/or enforceable claim of the '054 patent under any theory, including literal infringement or infringement under the doctrine of equivalents. Each claim of the '054 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, *et seq.*, including without limitation §§ 102, 103, and/or 112. Further, Plaintiff's claims of infringement as to the '054 patent are moot. *See* ECF No. 80. Plaintiff is precluded from asserted infringement of the '054 patent against these Defendants. *See id.*

## THIRD AFFIRMATIVE DEFENSE

## (Non-Infringement by Defendants of U.S. Patent No. 7,854,310 Invalidity of U.S. Patent No. 7,854,310, Mootness, Preclusion)

Defendants are not infringing and have not infringed, directly, by inducement, contributorily, willfully, or in any way, and valid and/or enforceable claim of the '310 patent under any theory, including literal infringement or infringement under the doctrine of equivalents. Each claim of the '310 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, *et seq.*, including without limitation §§ 102, 103, and/or 112. Further, Plaintiff's claims of infringement as to the '310 patent are moot. *See* ECF No. 80. Plaintiff is precluded from asserted infringement of the '310 patent against these Defendants. *See id.*

## FOURTH AFFIRMATIVE DEFENSE

## (Non-Infringement by Defendants of U.S. Patent No. 8,513,832)

Defendants are not infringing and have not infringed, directly, by inducement, contributorily, willfully, or in any way, and valid and/or enforceable claim of the '832

patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

## FIFTH AFFIRMATIVE DEFENSE

### (Non-Infringement by Defendants of U.S. Patent No. 8,749,403)

Defendants are not infringing and have not infringed, directly, by inducement, contributorily, willfully, or in any way, and valid and/or enforceable claim of the '403 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

## SIXTH AFFIRMATIVE DEFENSE

### (Non-Infringement by Defendants of U.S. Patent No. 9,391,474)

Defendants are not infringing and have not infringed, directly, by inducement, contributorily, willfully, or in any way, and valid and/or enforceable claim of the '474 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

## SEVENTH AFFIRMATIVE DEFENSE

### (Non-Infringement by Defendants of U.S. Patent No. 9,424,691)

Defendants are not infringing and have not infringed, directly, by inducement, contributorily, willfully, or in any way, and valid and/or enforceable claim of the '691 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

## EIGHTH AFFIRMATIVE DEFENSE

### (Invalidity of U.S. Patent No. 8,513,832)

Each claim of the '832 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, *et seq.*, including without limitation §§ 102, 103, and/or 112.

## NINTH AFFIRMATIVE DEFENSE

## (Invalidity of U.S. Patent No. 8,749,403)

Each claim of the '403 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, *et seq.*, including without limitation §§ 102, 103, and/or 112.

## TENTH AFFIRMATIVE DEFENSE

## (Invalidity of U.S. Patent No. 9,391,474)

Each claim of the '474 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, *et seq.*, including without limitation §§ 102, 103, and/or 112.

## ELEVENTH AFFIRMATIVE DEFENSE

## (Invalidity of U.S. Patent No. 9,424,691)

Each claim of the '691 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, *et seq.*, including without limitation §§ 102, 103, and/or 112.

## TWELFTH AFFIRMATIVE DEFENSE

## (Unclean Hands)

Plaintiff's claims are barred by their own unclean hands.

## THIRTEENTH AFFIRMATIVE DEFENSE

## (Laches)

Plaintiff's claims for patent infringement are barred in whole or in part by laches.

## FOURTEENTH AFFIRMATIVE DEFENSE

## (Waiver, Acquiescence, and/or Estoppel)

Plaintiff's claims are barred by the doctrines of waiver, acquiescence, and/or estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Duplicate Claims)

Without admitting that the First Amended Complaint states a claim upon which relief may be granted, any remedies are limited to the extent that any remedies are overlapping or recovery would be multiplied for any single alleged wrong.

## COUNTERCLAIMS

Defendants CivicSmart, Inc., Duncan Parking Technologies, Inc., and Duncan Solutions, Inc. allege on personal knowledge as to their own activities and on information and belief as to the activities of others as follows:

1.      Defendants incorporate by reference its responses to paragraphs 1-141 of the Plaintiff's First Amended Complaint, above, as if fully set forth herein.

## THE PARTIES

2.      CivicSmart, Inc. is a corporation organized under the laws of Delaware, with its principal place of business located at 316 N. Milwaukee Street, Suite 202, Milwaukee, Wisconsin 53202.

3.      Duncan Parking Technologies, Inc. is a corporation organized under the laws of Delaware, with its principal place of business located at 316 N. Milwaukee Street, Suite 202, Milwaukee, Wisconsin 53202.

4.      Duncan Solutions, Inc. is a corporation organized under the laws of California, with its principal place of business located at 633 West Wisconsin Avenue, Suite 1600, Milwaukee, Wisconsin 53203.

5.      IPS Group, Inc. is, on information and belief, a corporation organized under the laws of Pennsylvania, with its principal place of business at 7737 Kenamar Ct., San Diego, California 92121.

**JURISDICTION AND VENUE**

6.      Subject to the affirmative defenses and denials set forth above, this Court has jurisdiction over the subject matter of these Counterclaims pursuant to, without limitation, 28 U.S.C. §§ 1331 and 1338(a).

7.      Plaintiff IPS Group, Inc., submitted to the personal jurisdiction of this Court by, without limitation, bringing the present action alleging infringement of the '054, '310, '832, '403, '474, and '694 patents.

8.      Venue is proper in this Judicial District pursuant to, without limitation, 28 U.S.C. § 1400(b) and 28 U.S.C. §§ 1391(b) and (c), because this suit was filed in this district by IPS Group, Inc.

**NATURE OF THE ACTION**

9.      Defendants and Counterclaim-Plaintiffs assert counterclaims under the Federal Declaratory Judgment Act, seeking declaratory judgments under the patent laws of the United States, United States Code Title 35, that each claim of the '832, '403, '474, and '694 patents asserted by IPS Group, Inc. is invalid, unenforceable, and/or not infringed.

**COUNTERCLAIM COUNT ONE**

**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,513,832)**

10.     Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

11.     Plaintiff IPS Group, Inc. alleges in its First Amended Complaint that it "is the sole owner by assignment of the '832 Patent." Plaintiff IPS Group, Inc., has sued Defendants in the present action, alleging infringement of the '832 patent. Thus, an immediate, real and justiciable controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '832 patent.

73

12.     Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '832 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

13.     Defendants are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '832 patent.

## COUNTERCLAIM COUNT TWO

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,749,403)

14.     Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

15.     Plaintiff IPS Group, Inc. alleges in its First Amended Complaint that it "is the sole owner by assignment of the '403 Patent."  Plaintiff IPS Group, Inc., has sued Defendants in the present action, alleging infringement of the '403 patent.  Thus, an immediate, real and justiciable controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '403 patent.

16.     Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '403 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

17.     Defendants are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '403 patent.

## COUNTERCLAIM COUNT THREE

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,391,474)

18.     Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

19.    Plaintiff IPS Group, Inc. alleges in its First Amended Complaint that it "is the sole owner by assignment of the '474 Patent."  Plaintiff IPS Group, Inc., has sued Defendants in the present action, alleging infringement of the '474 patent.  Thus, an immediate, real and justiciable controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '474 patent.

20.    Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '474 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

21.    Defendants are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '474 patent.

## COUNTERCLAIM COUNT FOUR

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,424,691)

22.    Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

23.    Plaintiff IPS Group, Inc. alleges in its First Amended Complaint that it "is the sole owner by assignment of the '691 Patent."  Plaintiff IPS Group, Inc., has sued Defendants in the present action, alleging infringement of the '691 patent.  Thus, an immediate, real and justiciable controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '691 patent.

24.    Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '691 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

25.     Defendants are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '691 patent.

## COUNTERCLAIM COUNT FIVE

### (Declaratory Judgment of Invalidity of U.S. Patent No. 8,513,832)

26.     Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

27.     Plaintiff IPS Group, Inc. has sued Defendants in the present action, alleging infringement of the '832 patent.  Thus, an immediate, real and justiciable controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '832 patent.

28.     The claims of the '832 patent are invalid as obvious under 35. U.S.C. § 103.

29.     For example, the claims of the '832 patent are rendered obvious by the following references and/or a combination of the following references: U.S. Patent Nos. 5,201,396; 4,460,965; 4,310,890; 5,642,119; and U.S. Patent Application Publication Nos. 2007/0040449; 2005/0226201; 2002/0111768; and 2008/0052254; Chinese Publication No. 1037604, European Publication Nos. EP0933288B1 and EP0265328B1, and/or UK Publication No. GB2284919A.

    a.  "A power supply unit for supplying power to a parking meter" is found in at least in U.S. Patent App. Pub. 2007/0040449 (*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0090]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

    b.  "a rechargeable, main battery" is found at least in U.S. Patent App. Pub. 2007/0040449 (*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0079]) and/or Chinese Publication No.

1037604, either alone or in combination with each other or any of the other above-cited prior art.

c.   "a charging arrangement for charging the main battery" is found at least in U.S. Patent App. Pub. 2007/0040449 (*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0088]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

d.   "a set of connectors for the back-up battery" is found at least in U.S. Patent App. Pub. 2007/0040449 (*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0089]), either alone or in combination with each other or any of the other above-cited prior art.

e.   "a wireless communication device for communicating a status message regarding the state of the main battery and the state of the back-up battery to a control system external to the parking meter" is found at least in U.S. Patent App. Pub. 2007/0040449 (*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0071], [0083], [0097]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

f.   "a set of load terminals for connection to a load" is found at least in U.S. Patent App. Pub. 2007/0040449 (*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0076], [0096]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

g.   "a control unit for controlling supply of power to the load primarily from the main battery and secondarily from the back-up battery" is found at least in U.S. Patent App. Pub. 2007/0040449

(*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0010]), and/or either alone or in combination with each other or any of the other above-cited prior art.

h.   "a housing that encloses the main battery, the back-up battery, the control unit, and the wireless communication device" is found at least in U.S. Patent App. Pub. 2007/0040449 (*see, e.g.*, U.S. Patent App. Pub. 2007/0040449 at [0025]), either alone or in combination with each other or any of the other above-cited prior art.

i.   "wherein the housing includes the load terminals and is received within the parking meter" U.S. Patent App. Pub. 2007/0040449 and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

30.   A person of ordinary skill in the art would have been motivated to combine the above-cited references and/or employ common sense to render the claims obvious

31.   Defendants are entitled to a declaratory judgment that the claims of the '832 patent are invalid.

## **COUNTERCLAIM COUNT SIX**

### **(Declaratory Judgment of Invalidity of U.S. Patent No. 8,749,403)**

32.   Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

33.   Plaintiff IPS Group, Inc. has sued Defendants in the present action, alleging infringement of the '403 patent.  Thus, an immediate, real and justiciable controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '403 patent.

78

34. The claims of the '403 patent are invalid as obvious under 35. U.S.C. § 103.

35. For example, the claims of the '403 patent are rendered obvious by the following references and/or a combination of the following references: U.S. Patent Nos. 6,885,311; 6,812,857; 7,783,530; and 7,023,360; U.S. Patent Application Publication Nos. 2004/0254840 and/or 2006/0136131.

    a. "A meter device comprising" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.,* U.S. Patent No. 6,812,857 at 9:28-38), either alone or in combination with each other or any of the other above-cited prior art.

    b. "an internal clock" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.,* U.S. Patent No. 6,812,857 at 9:28-38), either alone or in combination with each other or any of the other above-cited prior art.

    c. "a display" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.,* U.S. Patent No. 6,812,857 at 9:28-38), either alone or in combination with each other or any of the other above-cited prior art.

    d. "a communication subsystem configured to provide two way wireless communication" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.,* U.S. Patent No. 6,812,857 at 9:28-38), either alone or in combination with each other or any of the other above-cited prior art.

    e.    "a controller module coupled to the internal clock, the display and the communication subsystem, the controller configured to control the communication subsystem to receive data indicative of a remote payment being completed, control the display to display an amount of time purchased by the remote payment for a parking session" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 5:63-6:9), either alone or in combination with each other or any of the other above-cited prior art.

    f.    "the controller configured to … monitor the clock to determine an amount of time remaining in the parking session, control the display to display the amount of time remaining, power down at least a portion of the communication subsystem subsequent to receiving the data indicative of the remote payment being completed" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 6:10-35) and/or U.S. Patent No. 6,812,857 (*see, e.g.,* U.S. Patent No. 6,812,857 at 5:58-65), either alone or in combination with each other or any of the other above-cited prior art.

    g.    "the controller configured to … wake up the powered down portion of the communication subsystem upon determining that they amount of time remaining is below a threshold time prior to expiration of the parking session" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 4:47-5:6) and/or U.S. Patent No. 6,812,857 (*see, e.g.,* U.S. Patent No. 6,812,857 at 7:15-31), either alone or in combination with each other or any of the other above-cited prior art.

80

h.   "the controller configured to … receive an indication of additional time being paid for remotely, and control the display to update the displayed time remaining to reflect the additional time" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 5:43-62), either alone or in combination with each other or any of the other above-cited prior art.

i.   "wherein the controller is further configured to, upon waking up the powered down portion of the communication subsystem, control the communication subsystem to transmit a message to a remote management system or to a wireless device of the registered user indicating the time remaining is approaching expiration time" is found at least in U.S. Patent No. 6,812,857 (*see, e.g.,* U.S. Patent No. 6,812,857 at 7:35-67), either alone or in combination with each other or any of the other above-cited prior art.

36.   A person of ordinary skill in the art would have been motivated to combine the above-cited references and/or employ common sense to render the claims obvious.

37.   Defendants are entitled to a declaratory judgment that the claims of the '403 patent are invalid.

## COUNTERCLAIM COUNT SEVEN

### (Declaratory Judgment of Invalidity of U.S. Patent No. 9,391,474)

38.   Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

39.   Plaintiff IPS Group, Inc. has sued Defendants in the present action, alleging infringement of the '474 patent.  Thus, an immediate, real and justiciable

controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '474 patent.

40.     The claims of the '474 patent are invalid as obvious under 35. U.S.C. § 103.

41.     For example, the claims of the '474 patent are rendered obvious by the following references and/or a combination of the following references: U.S. Patent Nos. 5,201,396; 4,460,965; 4,310,890; 5,642,119; and U.S. Patent Application Publication Nos. 2007/0040449; Chinese Publication No. 1037604, European Publication Nos. EP0933288B1 and EP0265328B1, and/or UK Publication No. GB2284919A.

    a.    "A power supply for supplying power to a parking meter" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0090]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

    b.    "a main battery which is rechargeable" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0079]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

    c.    "a charging arrangement comprising one or more terminals for connecting the main battery to one or more charging sources" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0088]) and/or Chinese Publication No.

1037604, either alone or in combination with each other or any of the other above-cited prior art.

d.    "a back-up battery which is replaceable and non-rechargeable" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0032] and [0076]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

e.    "at least one capacitor" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0086]) and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

f.    "a connection to a wireless communication device for communicating a status message regarding the state of the main battery and the state of the back-up battery to a control system external to the parking meter" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0086] and [0094]), either alone or in combination with each other or any of the other above-cited prior art.

g.    "a connection to a control unit for controlling supply of power to the parking meter primarily from the main battery and secondarily from the back-up battery, where the at least one capacitor assists during a peak power demand" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0010] and [0095])

and/or Chinese Publication No. 1037604, either alone or in combination with each other or any of the other above-cited prior art.

   h.   "wherein the main battery, the back-up battery, the at least one capacitor, the wireless communication device, and the control unit are received within the parking meter" is found at least in U.S. Patent Application Publication No. 2007/0040449 (*see, e.g.*, U.S. Patent Application Publication No. 2007/0040449 at [0044]), either alone or in combination with each other or any of the other above-cited prior art.

42.   A person of ordinary skill in the art would have been motivated to combine the above-cited references and/or employ common sense to render the claims obvious.

43.   Defendants are entitled to a declaratory judgment that the claims of the '474 patent are invalid.

## COUNTERCLAIM COUNT EIGHT

### (Declaratory Judgment of Invalidity of U.S. Patent No. 9,424,691)

44.   Defendants repeat and re-allege the allegations of the preceding paragraphs of these counterclaims as if fully set forth herein.

45.   Plaintiff IPS Group, Inc. has sued Defendants in the present action, alleging infringement of the '691 patent.  Thus, an immediate, real and justiciable controversy exists between IPS Group, Inc., on the one hand, and Defendants, on the other hand, with respect to the alleged infringement of the '691 patent.

46.   The claims of the '691 patent are invalid as obvious under 35. U.S.C. § 103.

47.   For example, the claims of the '691 patent are rendered obvious by the following references and/or a combination of the following references: U.S. Patent

Nos. 6,885,311; 6,812,857; 7,783,530; and 7,023,360; U.S. Patent Application

Publication Nos. 2004/0254840 and/or 2006/0136131.

a. "A meter device" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.*, U.S. Patent No. 6,812,857 at 9:28-39), either alone or in combination with each other or any of the other above-cited prior art.

b. "an internal clock" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.*, U.S. Patent No. 6,812,857 at 9:28-39), either alone or in combination with each other or any of the other above-cited prior art.

c. "a display" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.*, U.S. Patent No. 6,812,857 at 9:28-39), either alone or in combination with each other or any of the other above-cited prior art.

d. "a communication subsystem configured to provide two-way wireless communication" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 11:6-29) and/or U.S. Patent No. 6,812,857 (*see, e.g.*, U.S. Patent No. 6,812,857 at 9:28-39), either alone or in combination with each other or any of the other above-cited prior art.

e. "a controller module coupled to the internal clock, the display and the communication subsystem, the controller configured to control the communication subsystem to receive data indicative of a remote payment being completed" is found at least in U.S. Patent

85

No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 5:63-6:9), either alone or in combination with each other or any of the other above-cited prior art.

f.   "the controller configured to … control the display to display an amount of time purchased by the remote payment for a parking session, monitor the clock to determine a first amount of time remaining in the parking session, control the display to display the first amount of time remaining" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 6:10-35) and/or U.S. Patent No. 6,812,857 (*see, e.g.*, U.S. Patent No. 6,812,857 at 5:57-65), either alone or in combination with each other or any of the other above-cited prior art.

g.   "the controller configured to … power down at least a portion of the communication subsystem subsequent to receiving the data indicative of the remote payment being completed, wake up the powered down portion of the communication subsystem upon determining that the first amount of time remaining is below a threshold time prior to expiration of the parking session" is found at least in U.S. Patent No. 6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 4:47-5:6) and/or U.S. Patent No. 6,812,857 (*see, e.g.*, U.S. Patent No. 6,812,857 at 7:15-31), either alone or in combination with each other or any of the other above-cited prior art.

h.   "the controller configured to … receive an indication of additional time being paid for remotely, and control the display to update the displayed time remaining to reflect the additional time in a second amount of time remaining" is found at least in U.S. Patent No.

6,885,311 (*see, e.g.*, U.S. Patent No. 6,885,311 at 5:43-62), either alone or in combination with each other or any of the other above-cited prior art.

48.     A person of ordinary skill in the art would have been motivated to combine the above-cited references and/or employ common sense to render the claims obvious.

49.     Defendants are entitled to a declaratory judgment that the claims of the '691 patent are invalid.

### PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment with respect to IPS Group, Inc's claims and Defendants' defenses as follows:

a.     A judgment in favor of Defendants denying IPS Group all relief requested in its Complaint and dismissing its Complaint with prejudice;

b.     A judgment against IPS Group finding that Defendants have not and do not infringe and are not liable for any infringement of any valid and enforceable claim of the '832, '403, '474, and '691 patents;

c.     A judgment against IPS Group finding that the '832, '403, '474, and '691 patents are invalid;

d.     A judgment against IPS Group finding that the '832, '403, '474, and '691 patents are unenforceable;

e.     A permanent injunction restraining Plaintiff IPS Group, Inc. and its respective officers, agents, servants, employees, attorneys and any other persons acting on its behalf or in concert with it, from charging or threatening, orally or in writing, that the '832, '403, '474, and/or '691 patents have been infringed by Defendants under any subsection of 35 U.S.C. § 271;

f.     A judgment that this is an exceptional case under 35 U.S.C. § 285 and awarding Defendants their reasonable attorneys' fees;

g.      For an aware of costs to Defendants;

h.      Such other relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal rule of Civil Procedure 38(b), Defendants hereby request a trial by jury on all issues so triable including specifically on IPS Group's claims and Defendants' defenses thereto.

Dated:  November 8, 2017              Respectfully submitted,

**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**

*/s/Eric J. Eastham_____*

By:  Eric J. Eastham
      Keith P. Carroll
      William A. Meunier
      Michael T. Renaud
      Peter J. Cuomo
      Tiffany M. Knapp

Attorneys for Defendants
CIVICSMART, INC., DUNCAN PARKING
TECHNOLOGIES, INC., and DUNCAN
SOLUTIONS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On November 8, 2017, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties registered to receive service via the Court's CM/ECF system.

Executed on November 8, 2017, at San Diego, California.


/s/*Eric J. Eastham*

Eric J. Eastham

73227446v.1