UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPS GROUP, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CIVICSMART, INC., DUNCAN SOLUTIONS, INC. and DUNCAN PARKING TECHNOLOGIES, INC.,<br><br>        Defendants. | Case No.: 17-CV-632-CAB-(MDD)<br><br>**ORDER ON MOTION**<br>**TO CLARIFY CERTAIN**<br>**CLAIM CONSTRUCTIONS**<br>**[Doc. No. 142]** |

On December 18, 2018 the Court issued its claim construction order in this matter. [Doc. No. 130.] Plaintiff IPS Group, Inc. ("IPS") now brings this motion requesting clarification of certain of the constructions issued by the Court. [Doc. No. 142.] Defendants CivicSmart, Inc., Duncan Solutions, Inc. and Duncan Parking Technologies (collectively "CivicSmart") generally opposed the motion as IPS's attempt to simply reargue its claim construction positions to the Court. [Doc. No. 143.]

"When parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *GPNE Corp. v. Apple Inc*., 830 F.3d 1365, 1372 (Fed. Cir. 2016). The construction or clarification of constructions, however "could proceed ad infinitum, as every word – whether claim term itself or the words a court uses to construe

a claim term – is susceptible to further definition, elucidation, and explanation. *Id.*, at 1373 (*citing Eon Corp. IP Holdings, v. Silver Spring Networks,* 815 F.3d 1314, 1318 (Fed. Cir. 2016)). IPS contends that the Court's constructions created ambiguity as to the scope of the claims and therefore requests further elucidation as to what is meant. Having reviewed the submissions of the parties, the Court "clarifies" its constructions as follows.

1. The '832 Patent Claim Terms

In this case the parties sought construction of certain terms in U.S. Patent No. 8,513,832 for a "Power Supply Unit." Claim 1 of the '832 patent enumerates component parts of the power supply unit including a main battery, a back-up battery, a control unit and a wireless communications device, which according to the claim are all enclosed in a housing. [Doc. No. 108-3, Col. 3:45-60.] The parties agreed, and the Court construed "housing" as a "shell or casing."[1] The Court further construed "encloses" as "surrounds or contains." [Doc. No. 130, at 2.] Claim 1 further requires that the power supply's housing containing specific component parts of the power supply unit be "received within the parking meter," [Doc. No. 108-3, Col. 3:61-62], which the Court construed as "contained inside the parking meter device." [Doc. No. 130, at 3.] The Court now amends this construction to **contained substantially inside of the parking meter.**

Claim 17 is for a parking meter comprising a parking meter housing, a solar panel, and a power supply unit including a main battery, a back-up battery, a control unit and a wireless communications device enclosed in a housing that "is received in the parking meter housing." [Doc. No. 108-3, Col. 4:55-5:12.] For clarification, the Court now

---

[1] The text of the specification offers no description of the size, shape or material for the claimed housing for the power supply unit **10**, or the claimed housing for the parking meter **50**. Figure 3 depicts an example of a structure that encloses the components of the power supply unit. Figures 1 and 2 depict an example of a structure that encloses the components, including the independent power supply unit, of the parking meter **50.** These figures provide support for the Court's construction of housing as a "shell or casing."

2

17-CV-632-CAB-(MDD)

construes "received in the parking meter housing" as to **contained substantially inside the housing of the parking meter.**

Both Claim 1 and Claim 17 require that specific components of the power supply unit be enclosed in a housing and received within the parking meter, or the housing of the parking meter. The patent discloses the power supply unit as self-contained in a housing separate and apart, or independent of, the other parts of the parking meter. [*See id*., Figs. 1, 2 and 3.] The power supply unit is identified as distinct from other components of the parking meter, such as the coin validation unit, a timer, a display and solar panels that are not part of the power supply unit.[2] [*Id.*, Col. 2:56-63, Figs. 1, 2, and 3.] The Court therefore construed the power supply unit's limitation of a "housing that encloses" as an **independent shell or case that surrounds or contains** the enumerated component parts of the power supply unit.

Although the parties did not seek a construction of the term "parking meter," it was discussed at the claim construction hearing. It now appears from the parties' briefing that the meaning of "parking meter" in the context of this patent is the cause of conflict. To the extent the following differs from the discussion at the claim construction hearing, this written order prevails.

The '832 patent generally addresses a power supply unit for supplying power to a device. [*Id.*, Col. 1:16-17.] The patent identifies such a device as a single bay parking meter. [*Id.*, Col. 1:10-12.] "This invention extends to include a device, in particular a single bay stand alone parking meter **50**, having the power supply unit **10**." [*Id*., Col. 2:47-54, Figs. 1 and 2.] IPS amended Claim 1 during prosecution from "a power supply unit for providing power to a device" to "a power supply unit for providing power to a parking meter." [Doc. No. 109-6.] Although the patent states that the application of the invention

---

[2] "A coin validation unit **45** of the parking meter **50** is not a part of the present invention, but is mentioned for completeness, since the validation unit **45**, and other components, such as a timer and a display (not shown) are powered by the power supply unit **10,** being connected thereto via the load terminals **19.**"

3

is not limited to parking meters, and the original claim language was drawn to claim a generic "device" application, [Doc. No. 108-3, Col. 3:39-43, Doc. No. 109-6], to overcome prior art rejections, IPS amended Claim 1 to narrow it from any device to the single bay parking meter disclosed. Claim 17 claims a parking meter with the power supply unit. [Doc. No. 108-3, Col. 4:55-59.]

IPS seeks clarification that "parking meter" claimed in the patent is a single bay parking meter, and not just the parking meter mechanism for such a meter depicted in the patent's drawings. Figures 1 and 2 are "views" of part of the "parking meter body" (i.e., the meter's mechanism) illustrating an example of how the power supply unit (independently housed) may be received within the housing of the parking meter (i.e., within the housing of the mechanism of the parking meter). [*Id*., Col. 2:6-10.] This embodiment is an example of how a power supply unit may be received but does not limit the patent claim to this configuration.

In the term "parking meter" is construed as it is defined in the patent, **a single bay parking meter.**

2. The '403 Patent Claim Terms

The parties also sought construction of certain terms in U.S. Patent No. 8,749,403 and U.S. Patent No. 9,424,691 for "Parking Meter Communications for Remote Payment with Updated Display." Further "clarification" is now sought regarding the construction of the method step of claim 9 of the '403 patent and method step 11 of the '691 patent:

> activating the communication circuitry [the deactivated portion of the communication circuitry in step c] and initiating a communication session with the management system at a predetermined time prior to the expiration of the parking session set time

[Doc. No. 108-5, Col. 20:55-58; Doc. No. 108-6, Col. 21:4-7.]

The Court found this claim phrase unambiguous and declined any further construction at the initial claim construction hearing. [Doc. No. 130, at 7.]

These method claims require the setting of a time for a parking session and the initiation of a countdown of that set time toward zero, and then the deactivation of at least a portion of the communication circuitry. [Doc. No. 108-5, at Col. 20:50-54; Doc. No. 108-6, at Col. 20:66-Col. 21:3.] At a predetermined time before the set parking session expires, the system activates and communicates information to determine if additional time should be added the parking session. [*Id.*, at Col. 20:55-61; *Id.*, Col. 21:4-10.] "A" is commonly construed to mean one or more, *Baldwin Graphic Sys, Inc., v. Siebert,* 512 F.3d 1338, 1342-43 (Fed. Cir. 2008), and the Court finds no reason to deviate from the general rule in this instance. Therefore, this activation and communication step may happen at one or more predetermined times before the expiration of the session set time. No further "clarification" or "elucidation" is warranted for these steps.

It is **SO ORDERED.**

Dated: March 29, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge